GEORGE ANTHONY MITCHESON[1] *vs.* KENNETH IZDEPSKI. No. 90-P-77. January 22, 1992. *Insurance*, Comprehensive liability insurance, Construction of policy. *Contract*, Insurance.

After the automobile in which he was a passenger was involved in an accident, Kenneth Izdepski sued Scotty's Grille, Inc. (Scotty's), claiming that he suffered personal injuries as a result of Scotty's negligence in serving alcoholic beverages to the driver of the automobile. Izdepski also alleged that his injuries were due to Scotty's negligence in failing properly to select, hire, train, and monitor its employees with respect to the serving of alcoholic beverages. At all pertinent times, Scotty's operated a bar business serving alcoholic beverages to patrons and was insured under a prop-

---

[1]On behalf of himself and other underwriters at Lloyd's of London subscribing to the certificate of insurance at issue in this case.

erty and liability policy issued by underwriters at Lloyd's of London (Lloyd's).

After assuming Scotty's defense in the underlying personal injury suit under a reservation of rights, Lloyd's, relying on an exclusion in the liability policy, brought this action seeking a declaration that it had no obligation to defend or indemnify Scotty's. A judge of the Superior Court allowed Lloyd's motion for summary judgment. While both Scotty's and Izdepski originally were joined in this action as defendants, only Izdepski appeals from the judgment that declared that Lloyd's had no duty to defend or indemnify Scotty's in the underlying action.[2]

The insurance policy is headed by a page entitled "Certificate of Insurance" on which is indicated, among other things, the name and address of the insured, the coverage period, and the fact that the insured premises are occupied for restaurant purposes. The coverage portion of the certificate of insurance indicates that personal property is covered under the policy, together with liability for bodily injury and property damage up to certain specified dollar limits. The certificate further provides that it is subject to fourteen attached forms which are identified by letters, numbers, and dates. Among the forms so designated is that entitled "SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE." That form contains on one page the following pertinent provisions:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises . . . and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury. . . .

> "This insurance does not apply: . . . (h) to bodily injury . . . for which the insured . . . may be held liable (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages . . . ."

Immediately preceding the nineteen exclusionary provisions ("a" through "s") of which the disputed exclusion is the eighth ("h") appears the word "Exclusions" in bold type.

Izdepski's initial claim that the exclusionary provision is ambiguous ignores the Supreme Judicial Court's determination with respect to a clause involving essentially similar wording that "the language of the exclusion is

---

[2]The presence of counterclaims filed by Scotty's prevented judgment from being entered at the time that the judge allowed Lloyd's motion for summary judgment. A declaratory judgment was ordered by another judge after he allowed a motion to dismiss the counterclaims.

clear and unambiguous." *Newell-Blais Post #443, Veterans of Foreign Wars of the U.S., Inc.* v. *Shelby Mut. Ins. Co.*, 396 Mass. 633, 638 (1986). Recognizing that this determination was made in connection with an examination of the exclusionary clause which concerned issues different from those raised here, we have examined the exclusion afresh, as we must, *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 & n.4 (1987), and conclude that it is free of ambiguity. It is not reasonably susceptible of more than one meaning. *Id.* at 474. Controversy between the parties does not itself create ambiguity. *Id.* at 475. Nor does any ambiguity arise when we consider the exclusionary language in the context of the language and structure of the whole policy. See *Ronald Bouchard, Inc.* v. *Hartford Acc. & Indem. Co.*, 369 Mass. 846, 849 (1976); *Jefferson Ins. Co.* v. *Holyoke*, *supra*. The coverage provisions of the "Certificate of Insurance" do not create ambiguity; nor are they misleading. The certificate clearly indicates that the described coverages are subject to certain designated forms. Among those forms is that which contains on its first page a more detailed description of the liability coverage together with the exclusion in question, set forth below a prominent "Exclusions" heading. The disputed exclusion is common to insurance policies covering establishments that distribute alcoholic beverages and has been found free of ambiguity and been uniformly applied by a "host of states." See *Williams* v. *United States Fid. & Guar. Co.*, 854 F.2d 106, 108 & n.6 (5th Cir. 1988).

Contrary to Izdepski's argument, none of the materials which properly is before this court raises any question of marketing techniques employed by Lloyd's which might "make even a totally unambiguous insurance contract misleading." *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 149 & n.14 (1982). The fact that the page upon which both the liability coverage and the exclusion appear is one among many in a complex policy does not of itself mislead or create ambiguity.

Izdepski's claim against Scotty's for negligent selection, training, and monitoring of its employees can fare no better than his claim for negligent serving of alcoholic beverages under the insurance policy. Both claims are bottomed on the foreseeability of injury to a third party arising from a business negligently serving alcoholic beverages to an intoxicated person. See *Adamian* v. *Three Sons, Inc.*, 353 Mass. 498, 500-501 (1968); *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64, 69 (1981).

Lastly, Izdepski argues that the doctrine of reasonable expectations[3] is applicable in this case and apparently relies on conflicting deposition testimony as establishing a genuine issue of fact concerning an expectation on the part of the principal officer of Scotty's that the insurance policy covered liability related to the serving of alcoholic beverages. We need not engage in a discussion of whether this doctrine has been adopted by our

---

[3]For a description of the doctrine, see *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. at 476-477.

courts. See *Home Indem. Ins. Co.* v. *Merchants Distribs., Inc.*, 396 Mass. 103, 107 (1985); *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. at 476-477; *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 388 n.11 (1988). Assuming that it applies, even in the absence of ambiguity, *Jefferson Ins. Co.* v. *Holyoke, supra* at 477, it is clear that the standard it imposes is an objective one. *Bond Bros.* v. *Robinson*, 393 Mass. 546, 551 (1984). *Moore* v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 1010, 1011 (1988). *Jefferson Ins. Co.* v. *Holyoke, supra* at 476. Applying such a standard, we find nothing in our record indicating that the "structure, content, manner of printing of the policy, or methods and practices of marketing" of Lloyd's or its agents created a reasonable expectation that Scotty's acquired more extensive insurance coverage than it received.

*Judgment affirmed.*

*Brian P. Harris* for the defendant.
*John D. Boyle* (*Lois M. Farmer* with him) for the plaintiffs.