Welch, J.
The plaintiff, Lisa Picard, has filed this action for declaratory judgment seeking an interpretation of the provisions of two insurance policies existing between the two defendants, Eastern Casually Insurance Company (“Eastern”) and Piccadilly Management Group Ltd. (“PMG”) which were in effect on March 19, 1990. The plaintiff alleges she suffered personal injuries in an auto accident due to negligence on the part of three corporations that jointly operate the Worcester Piccadilly Pub Restaurant, one of which is the defendant PMG. In a separate civil action, the plaintiff has sued all three corporations seeking recovery for her personal injuries. The parties agree that there is no ambiguity as to the applicability of the provisions of the two insurance policies to two of the corporations but seek in this action to ascertain the coverage provided to PMG. The plaintiff and Eastern have filed cross motions for summary judgments. For the reasons discussed below, the plaintiffs motion for summary judgment is DENIED and defendant PMG’s motion for summary judgment is ALLOWED.
BACKGROUND
On about March 19, 1990, the plaintiff and Kevin Toney (“Toney”) were patrons of the Worcester Piccadilly Pub Restaurant (“the Pub”). During the course of the night, Toney purchased and consumed alcoholic beverages at the Pub. The plaintiff contends that Toney was served drinks at the Pub even after he was visibly intoxicated. Shortly after Toney left the Pub, the car he was driving was involved in an accident. The plaintiff, a passenger in Toney’s car, was severely injured.[2]
Worcester Piccadilly Pub, Inc.[3] (“WPPI”), Central Payroll Corporation[4] (“Central Payroll”) and the defendant PMG were three corporations which through their combined efforts, operated the Pub, located at 480-482 Shrewsbury Street in Worcester.
The defendant PMG employed salaried individuals who worked at the Pub as managers under a Management Agreement with WPPI. PMG employees supervised the bartenders at the Pub and told them what to do and how to do it. It was also PMG employees’ responsibility to ensure bartenders and servers were properly trained about serving alcohol. It was not part of their regular job responsibilities to manufacture, distribute, serve or sell alcoholic beverages to patrons.
Eastern had issued a $5 million Umbrella Liability Insurance Policy (the “Umbrella Policy”) in connection with the operation of the Pub, naming as insureds PMG, WPPI and Central Payroll, which was in effect on March 19, 1990.[5] The Umbrella Policy con tains two relevant sections. One section in “Part II, The Coverage” provides coverage for personal injuries,[6] while another contains an exclusion which provided:
B EXCLUSIONS . . .
14. This policy does not apply . . . [t]o personal injuiy ... for which the insured . . . may be held liable ... as a person or an organization engaged in or the business of manufacturing distributing, selling or serving alcoholic beverages . . .
Also in effect on the day of the incident was a “Special Multi-Peril Policy” which included “Section II: General Liability Coverage ("the General Liability Policy”) issued by Eastern in connection with the Pub, naming as insureds PMG, WPPI, and Central Payroll. In the General Liability Policy, Eastern contracted to pay up to $ 1 million for personal injuries[7] but also had an exclusion for alcohol-related injuries. This exclusion provided in relevant part:
This insurance does not apply . . . (h) to bodily injuiy ... for which the insured . . . may be held liable ... (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages.
The General Liability Policy also contained a $500,000 Liquor Liability Insurance Endorsement (“Liquor Liability Endorsement”) which provided in relevant part:
COVERAGE X — LIQUOR LIABILITY. The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injuiy to which this insurance applies, sustained by any person if such liability is imposed upon the insured by reasons of the selling, serving or giving of any alcoholic beverage at or from the insured premises . . .
DISCUSSION
The plaintiff contends that Eastern is liable for up to $6 million in insurance coverage to PMG as a result of her injuries. She contends that PMG is entitled to $1 million under the terms of the General Liability Policy and $5 million under the Umbrella Policy. She alleges that she is not limited to the $500,000 provided by the Liquor Liability Endorsement because the ex- *558 elusion clauses of the two policies do not apply to PMG. Specifically, she contends that “the exclusionary clauses do not apply to the management activities of PMG because it did not perform the alcohol-related activities excluded from coverage.” PMG is not, she contends an “organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages" as excluded by the Umbrella Policy and the General Liability Policy. As these exclusions do not specify “supervising” which is what PMG employees do, the plaintiff contends coverage for her injuries is not excluded.
An exclusion clause similar to this one has been interpreted by the Massachusetts Appeals Court to be unambiguous in excluding coverage for the plaintiffs claims. Mitcheson v. Izdepski, 32 Mass.App.Ct. 903 (1992). PMG is “engaged in the business” of selling and serving alcoholic beverages. The plaintiffs argument that supervisors of an organization are not engaged in the conduct of its business is specious. PMG’s managers were an integral part of the routine business of serving and selling alcoholic beverages at the Pub. The plaintiffs claim against PMG for negligent supervision of its employees is based on the foreseeability of injury to a third party arising from a business negligently serving alcoholic beverages to an intoxicated person. Id. at 905. This is exactly the situation towards which the exclusion clauses were directed. Thus PMG may recover from Eastern only under the Liquor Liability Endorsement.
Similarly, there is nothing on the record which supports the plaintiffs argument that Eastern created a reasonable expectation that PMG acquired more extensive insurance coverage than it received. See id. at 905-06.
ORDER
After review and consideration of the materials and arguments submitted by the parties, this court declares the rights of the parties under the two insurance polices at issue as follows:
1. Exclusion (B)(14) of “Part II: The Coverage” of the Umbrella Liability Insurance Policy does apply to the defendant PMG as to its alleged acts and omissions identified by the plaintiff Second Amended Complaint and the plaintiff is excluded from recovery thereunder.
2. Exclusion (h)(1) of “Section II — Liability Coverage” df the Special Multi-Peril Policy does apply to PMG as to its alleged acts and omissions identified in the plaintiffs Second Amended Complaints and the plaintiff is excluded from recovery thereunder.
3. The Liquor Liability Insurance Endorsement to the Special Multi-Peril Policy does apply to PMG and the plaintiff may recover thereunder.
4. If the plaintiff is successful in her suit against PMG, the amount of insurance coverage available to PMG to pay her in resolution of the plaintiffs claims totals $500,000 from the Liquor Liability Insurance Endorsement.
5.It is hereby ORDERED that the plaintiffs motion for summary judgment is DENIED and the defendant’s motion for summary judgment is ALLOWED.

 The last three sentences in this paragraph are included to provide background for this action. While disputed by the parties, the assertions are not material to this decision.

 WPPI, at all times relevant to this action, was the owner of a liquor license issued by the Worcester License Commission. That license authorizes the exposing, keeping and selling of all kinds of alcoholic beverages to be drunk on the premises of the Pub. This corporation had no employees of its own and is not a party to this action.

 Central Payroll provides hourly workers to WPPI, under a contract between those two corporations. These workers sell and serve alcoholic beverages at the Pub and perform services such as tending bar, waitering, cooking and other non-managerial functions. Central Payroll is also not a party to this action.

 There are other name insureds in this policy which are not relevant to this case.

 The provision states in relevant part: “We will pay on behalf of the Insured the ultimate net loss arising out of occurrences during the policy period in excess of- the underlying insurance or the retained limit, whichever is the greater, because of: Personal Injury, . . .”

 The provision for coverage for personal injuries stated:
The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury ... to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises . . .