Hinkle, J.
This case arises out of an applicant’s claim for disability insurance coverage. In the first count of his amended complaint, plaintiff Frank Ventola contends that defendant Berkshire Life Insurance Company (“Berkshire”) is obligated to issue him a disability policy and make payments thereunder. The second count alleges improper failure to settle Ventola’s insurance claim in breach of Mass. Gen. Laws c. 93A and c. 176D. The third count asserts claims of misrepresentation and estoppel in violation of Chapters 93A and 176D.
Ventola alleges that after completing an application for disability insurance and paying his first premium he secured disability insurance with Berkshire because he was then insurable. Berkshire contends that Ventola failed to complete successfully his medical examination, a condition precedent of the insurance contract. Defendant now moves for summary judgment on all counts.
Based on the affidavits on file, the memoranda of the parties and oral argument, for the reasons set forth below, the defendant’s motion is ALLOWED as to Counts I and II and DENIED as to Count III.
BACKGROUND
Ventola is the president and controlling shareholder of Winthrop Associates, Inc., the owner of Martini Carl, a retail clothing store in Boston with an additional location in Burlington, Massachusetts. Before becoming blind in May of 1992, Ventola was in charge of all corporate operations. He purchased all types of insurance for the corporation, including health insurance for its employees.
Ventola initially met with Linda Dilanni, a licensed Berkshire agent, in April of 1991 at the premises of Martini Carl. On October 8,1991, Ventola and Dilanni had a second meeting regarding disability insurance. Ventola met with Dilanni at her office and applied for a disability insurance policy. The application form references a conditional receipt and does not by its terms make any promise of coverage. At the time of his meeting with Dilanni, Ventola signed two portions of the application, Part 1 (general information) and Part 2 (non-medical). He also signed a Financial Supplement. Ventola did not pay a premium nor did he complete the medical portion of Part II of the application, which is completed with a physician.
At the October 8 meeting Dilanni told the plaintiff that he would need a medical examination, although she did not discuss the significance of the exam.[1] Plaintiff alleges that Dilanni did not tell him that he would have to sign another medical history form or that coverage depended on the completed medical exam. For purposes of the motion before me, I take these allegations as true.
Also during the October 8 meeting, Ventola and Dilanni reviewed a Berkshire sales brochure entitled “Disability Income Protection.” Under a section of that brochure entitled “Solving The Problem” appear the words “Application/Deposit/Medical History Immediate Protection."
During the October 8 meeting Dilanni gave Ventola a blank, unexecuted conditional receipt, which states in pertinent part:
THIS RECEIPT DOES NOT CREATE ANY TEMPORARY OR INTERIM INSURANCE. IT DOES, HOWEVER, SET THE DATE AND CONDITIONS UNDER WHICH THE INSURANCE BEING APPLIED FOR WILL GO INTO EFFECT. UNLESS ALL OF THE CONDITIONS IN PARAGRAPH 3 BELOW ARE MET IN FULL, NO INSURANCE WILL BECOME EFFECTIVE. NO AGENT OF THE COMPANY AND NO BROKER IS AUTHORIZED TO ALTER OR WAIVE ANY OF OUR REQUIREMENTS.
2. Effective Date
As used herein, “effective date” means the latest of (i) the date of the Application (s) for Insurance (Part 1 (s)), (ii) the date of the Application for Insurance (Part 2(s)) (or the date of the latest Part 2(s) if more than one is required), (iii) the date of this *349 receipt, or (iv) the Policy Date, if any, requested in the application(s).
3. Conditions Under Which Insurance May Become Effective
The insurance in the amount and for the plan applied for will. . . become effective as of the Effective Date only if all of the following conditions are met:
(a) all required parts of the applications(s) and all medical examinations, tests, x-rays and electrocardiograms which we require have been completed; (b) on the Effective Date the Proposed Insured(s) is (are), in the opinion of our authorized officers at our Home Office, insurable and acceptable risk(s) under our rules and practices for the proposed insurance exactly as applied for without modification; (c) on the date of this receipt, all answers and statements in any part of the application(s) having an earlier date are complete and true as though given on the date of this receipt.

If any of these conditions is not met, there shall be no liability on our part except to return payment accompanying this receipt in the form of our check upon surrender of this receipt

On October 10, 1991, Ventola faxed a copy of the conditional receipt to his accountant, with a transmittal letter requesting his advice regarding it.
Ventola claims he sent a check to Dilanni for the premium on October 11, 1991, which Berkshire states it received no earlier than October 21, 1991. For purposes of the pending motion, I accept Ventola’s date as the date of transmittal.
Ventola completed his application forms and had a medical exam on November 12, 1991. After the medical examination, Berkshire declined his application and refunded the premium he had paid.
On October 14, 1991, Ventola first experienced symptoms of cerebral amyloid angiopathy, a vascular brain disease. Subsequent hemorrhages have rendered the plaintiff permanently blind.
DISCUSSION
Summary judgment shall be allowed where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ. P. 56(c). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
Ventola contends that under Berkshire’s conditional receipt, an applicant who pays a premium is covered from that point in time, if the applicant is then insurable. Berkshire asserts that the conditional receipt unambiguously makes successful completion of a medical exam a condition of coverage. Berkshire also argues that Ventola inflated his earned income by $30,000 in his application, which if true would disqualify him for coverage under the terms of the conditional receipt. Because I agree with Berkshire that plaintiffs failure to complete a medical examination means that no disability coverage was ever in effect, I do not address the income misrepresentation issue.
Under the circumstances of this case, the test for insurance coverage is whether “an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” Atlantic Mutual Ins. Co. v. McFadden, 413 Mass. 90, 92 (1992) (emphasis added). Here, the application Ventola partially completed represented an offer by him which could become a contract only when accepted by Berkshire in accordance with its terms. The language of the conditional receipt states clearly and unambiguously that the applicant must complete a medical examination, if required, before insurance becomes effective.
The insurance in the amount and the plan applied for will . . . become effective . . . only if ... all medical examinations . . . which we require have been completed [and] the Proposed Insured(s) is (are) . . . insurable . . . under our rules and practices for the proposed insurance exactly as applied for without modification.
Since the plaintiff did not complete a satisfactory medical examination no disability insurance was ever in effect.
Ventola cites authority from other jurisdictions that conditional receipts afford instant coverage. See Toevs v. Western Farm Bureau Life Ins. Co., 483 P.2d 682 (Idaho 1971); Service v. Pyramid Life Ins. Co., 440 P.2d 944 (Kan. 1968); Collister v. Nationwide Life Ins. Co., 388 A.2d 1346 (Pa. 1978), cert. denied, 439 U.S. 1089 (1979). These decisions, however, apply the doctrine of “reasonable expectations” which permits departure from the express language of an insurance policy to fulfill a policyholder’s supposed reasonable expectation of the coverage of a policy. See R. Keeton, Insurance Law Rights at Variance With Policy Provisions, 83 Harv.L.Rev. 961 (1970).
Massachusetts, however, has not explicitly adopted the “reasonable expectations” doctrine. Jefferson Ins. Co. v. City of Holyoke, 23 Mass.App.Ct. 472, 477 (1987); Mitcheson v. Izdepski, 32 Mass.App.Ct. 903 (1992) (rescript).
As a matter of public policy, to impose disability coverage before completion of a medical examination *350 would invite fraud. On the record before me, there is no evidence to indicate that the objectively reasonable expectations of the parties intended the policy to cover persons in Ventola’s position. Since the text of the conditional receipt is unambiguous, no applicant could assume coverage without a medical examination.
I also rule that plaintiffs claim for failure to effect a settlement under the policy fails as a matter of law since no insurance was in effect.
Because disputed issues of fact exist as to Dilanni’s representation of immediate coverage to Ventola and her use of the sales brochure during the October 8 meeting, as well as her authority to make such representations, Ventola’s claim based upon misrepresentation and estoppel cannot be resolved by summary judgment.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s motion for summary judgment is ALLOWED as to Counts I and II and DENIED as to Count III.

According to plaintiffs deposition testimony, he believed his coverage was in effect when he left the meeting with Dilanni, even though he had not paid the premium. He contradicts that assertion in later testimony, where he states that the following conversation occurred: “Linda created an analogy with regard to my travelling home on Route 128. The analogy was wouldn’t it be a shame that you already decided to purchase the policy and now something happened to you. You wouldn’t be covered unless you were to sign this application and send me a check.” Plaintiff alleges that this question led him to believe that coverage would begin upon payment of the premium.