Coven, J.
This is an action by former tenants Kara L. and Charles R. Carter (the “Carters”) to recover for violations of the security deposit law, G.L.c. 186, §15B, and of G.L.c. 93A by their former landlord, defendant Mae Seto (“Seto”).[2] The trial court entered summary judgment for Seto on the parties’ Mass. R. Civ. R, Rule 56, cross-motions, and the Carters brought this Dist./Mun. Cts. R.A.D. A., Rule 8A, expedited appeal.[3]
The record indicates that the Carters executed a written lease of an apartment in Newton for an original eleven-month term beginning September 1,1998. They remained in possession of the premises until August 24, 2002, and paid the lease rent of $2,000.00 per month for the entire period of their occupancy. The lease described the premises as consisting of “three (3) bedrooms, livingroom, dinin-groom, kitchen, 2.5 bathrooms, basement and garage [emphasis added].”[4]
At the inception of the tenancy and pursuant to paragraph 7 of the lease addendum, Seto collected from the Carters “$2,000.00 to be held as security deposit.” The deposit was placed in a separate interest-bearing account as required by G.L.c. 186, §15B. For the years 1999, 2000 and 2001, Seto gave the Carters a 1099 form which falsely suggested that the interest earned by the Carters on their security deposit was paid to them. However, no payment of the security deposit interest was ever made by Seto during the Carters’ tenancy, no interest was ever credited against any rent due, and no notice of the Carters’ right to so credit the annual interest was ever given by Seto. The Carters were also required to pay for the annual maintenance contract on the oil burner that serviced their apartment. These payments totaled $400.00.
In addition to what both parties agree was a security deposit, Seto collected an additional $150.00 from the Carters pursuant to the lease addendum. In paragraph 3 of the addendum, Seto expressly “acknowledge^ receipt of payment of $150.00 to be held as deposit for garage door mechanism and electric eye unit. Any damage to the garage door mechanism or electric eye unit due to negligence],] the [Carters] forfeit!] the deposit.” This additional deposit was not placed in a separate interest-bearing account, nor was any interest paid on it. With respect to the deposit for the garage door mechanism and electric eye unit, the motion judge “found” that the “parties reasonably expected” that the deposit “was NOT a security deposit for the premises, but was a sum reasonable and in the nature of a key deposit to be returned to the tenant if the opener was returned when the tenants vacated the premises.” Reiterating the point, the judge stated “that said $150.00 *64 was NOT an excess deposit for the premises because that was not the intention of the parties at the time of the lease.”
Subsequent to the Carters’ termination of their occupancy, Seto forwarded a letter dated September 16,2002 accounting for the $2,000.00 security deposit and the interest earned on it. Seto’s letter then itemized damages to the apartment and deducted those amounts, leaving a balance of $120.22. Seto added to that figure the $150.00 deposit for the garage door mechanism and electric eye unit. Of the $2,150.00 deposit collected by Seto at the commencement of the tenancy plus three years of interest earned, Seto concluded that the Carters were entitled to a return of only $270.22.
Seto’s letter was not signed under the pains and penalties of perjury. Seto also failed to include in the letter any repair bills or estimates to substantiate the amount of damages she deducted from the security deposit. On October 15,2002, the Carters served Seto with a G.Lc. 93A demand letter alleging numerous violations of G.L.c. 186, §15B. In a November 5, 2002 response, Seto provided a contractor’s billing estimate for the damages she had alleged,[5] plus a copy of her September 16, 2002 letter which she signed under the pains and penalties of perjury. Seto also enclosed a check for $400.00 as reimbursement for the Carters’ oil burner maintenance contract payments.[6]
1. Where parties have filed cross-motions for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party “entitled to judgment as a matter of law.” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The existence of any genuine question of material fact necessarily precludes the proper entry of summary judgment. Judicial findings of fact are thus “antithetical” to summary judgment which, by definition, is an ultimate ruling of law upon undisputed facts. Cruickshank v. Commerce Ins. Co., 2004 Mass. App. Div. 103, 104 and cases cited.[7] Despite conflicting argument, primarily by Seto, as to the correct interpretation of the dispositive facts in this case, the facts themselves are clear and established by the record.
The law to be applied to those facts is equally clear. The Supreme Judicial Court has stated that G.L.c. 186, §15B “is unambiguous.” Mellor v. Berman, 390 Mass. 275, 279 (1983), and must be interpreted as written. See also Jinwala v. Bizzaro, 24 Mass. App. Ct. 1, 4-6 (1987).
The legislative history of G.L.c. 186, §15B conclusively shows that the *65 Legislature intends any violation of G.L.c. 186, §15B(6)(a), (d) and (e) to result in the imposition of treble damages. It is not for this court to judge the wisdom of legislation or to seek to rewrite the clear intention expressed by the statute. A finding of good faith, therefore, is not a basis for an exception to the multiple damages provision of G.L.c. 186B, §15B(7).
Mellor, supra at 283. Nor does the statute permit violations of its terms to be excused as merely technical, unintended or insufficiently egregious to warrant the very penalties prescribed by the Legislature.
2. Seto argues that the record supports the judge’s determination that the parties did not view the receipt of the $150.00 deposit for the garage door mechanism and electric eye unit to be part of a security deposit, but instead considered it as akin to a key deposit for which a tenant may be charged pursuant to G.L.c. 186, §15B(1) (b) (iv). As support for this argument, Seto refers to an admission by the Carters, in response to Seto’s requests for admissions, that they occasionally entered the apartment through the garage. The requests for admissions were not made part of the record. The Carters argue that the plain language of the lease addendum makes clear that the deposit Seto collected was a security deposit to cover damage.
Section 15B(l)(b)(iv) permits a landlord to collect from a tenant “the purchase and installation cost for a key and lock.” We need not decide on this appeal whether a garage door opener that allows access to a garage through which a tenant may enter an apartment would qualify as a key under §15B (1) (b) (iv). The $150.00 deposit Seto received was designated as a “deposit for [a] garage door mechanism and electric eye unit.” The unambiguous language of the addendum does not limit the receipt of the $150.00 to the garage door opener; the deposit also covers the “electric eye unit.” Moreover, there is nothing in the record to support a determination that the garage door opener had a cost or value of $150.00. The record is devoid of any evidence that the $150.00 deposit presented a cost associated with the purchase and installation of a key and lock.
Section 15B (1) (b) (iii) prohibits a landlord from collecting a security deposit in excess of the amount of the first month’s rent. Demanding and receiving a security deposit in excess of that amount is an unfair and deceptive practice pursuant to the Attorney General’s landlord-tenant regulations. 940 CMR 3.17(4) (a)(3).[8]
3. The motion judge appears to have ruled that the yearly receipt by the Carters of the 1099 tax forms, sent by Seto to indicate interest earned on the $2,000.00 security deposit, somehow satisfied the requirements of §15B(3) (b). However, the statute obligates a landlord who collects a security deposit to “give or send” to the tenant at the end of each year of a tenancy “the interest which is due or ... [to] notif[y] ... the tenant [that he] may deduct the interest from the ... next rental payment.” A 1099 form is sent during tax season. The notice required by the statute is to be given at the end of the tenancy year. In this case, it should have been given by September of each year of the Carters’ tenancy. More significantly, the 1099 forms did not constitute either payment of the annual interest to the Carters, or notice that the interest could be deducted from the next month’s rent.
*66 Seto’s failure to comply with this statutory requirement was an unfair and deceptive act under 940 CMR 3.17(4) (c)[9] and (k) .[10]
4. There is no material dispute as to Seto’s failure in her September 16, 2002 accounting to swear “under the pains and penalties of perjury” to the truth of the cost of the damages she deducted from the security deposit Nor did she include the required documentation. Section 15B(4) (iii) requires that if deductions are to be made against a security deposit, the landlord must
provide to the tenant within ... thirty days an itemized list of damages, sworn to by the lessor or his agent under pains and penalties of perjury, itemizing in precise detail the nature of the damage and of the repairs necessary to correct such damage, and written evidence, such as estimates, bills, invoices or receipts, indicating the actual or estimated cost thereof.
Seto did not comply with this provision within the mandated time. Nor did she make any effort to satisfy these statutory requirements until after she was served with the Carters’ G.L.c. 93A demand letter.
What remains to be addressed is the effect of Seto’s noncompliance on her right to retain any portion of the security deposit. Section 15B (6) lists those events the occurrence of which result in the forfeiture of a lessor’s right “ [t] o retain any portion of [a] security deposit.” Of particular significance in this case is §15B(6)(b), which provides that a lessor who “fails to furnish the tenant within thirty days after the termination of the occupancy the itemized list of damages, if any, in compliance with the provisions of’ §15B forfeits the right to retain any portion of the security deposit. The question then becomes whether an itemized list of damages which is not signed and submitted “under pains and penalties of perjury” is a list which complies with the requirements of §15B.
The requirement of “specific itemization” is to “ensure that ‘landlords do not make spurious and unfounded deductions for damage.’ McGrath v. Mishara, 386 Mass. 74, 80 (1982).” Mellor, supra at 276 n.4. An itemization not sworn to under oath would not provide the level of protection against fraudulent or groundless deductions intended by the Legislature. The statement that itemized damages are identified and deducted “under the pains and penalties of perjury” is a critical and essential component of the itemization list mandated by the statute and is a requirement for a landlord’s compliance with the same.
Seto’s failure to submit a properly sworn itemized list of security deposit deductions within the time mandated by the statute resulted in a forfeiture of her right to retain any portion of the security deposit. Seto was, therefore, required to return to the Carters the full amount of the security deposit within thirty days of the termination of the tenancy. She did not do so, and that failure was a violation of §15B(6) (e). Pursuant to §15B(7), the Carters were entitled to an award of “three times the amount of [their] security deposit or balance thereof to which [they were] entitled plus interest at the rate of five percent from the date when such payment became due, together with court costs and reasonable attorney’s fees.”[11]
Seto argues that this construction of the statute is foreclosed by Broadhurst v. *67 Nader, 1998 Mass. App. Div. 104. That case is inapposite because there was no finding therein of any violation of §15B(6). The Appellate Division properly concluded that an award of multiple damages under §15B(7), which must be predicated upon a violation of §15B(6), was correctly denied.
A violation of §15B(6) (e) is made an unfair and deceptive practice by 940 CMR 3.17(4) (g).
Accordingly, the judgment in favor of defendant Seto is vacated, the allowance of Seto’s summary judgment motion is reversed and judgment is to be entered for the Carters. Pursuant to G.L.C. 93A damages are assessed for Seto’s receipt of a security deposit in excess of the first month’s rent in the amount of $25.00, and for Seto’s failure to send the Carters the yearly interest on their security deposit or provide them with the required notice in the amount of $25.00. Pursuant to G.L.c. 186, §15B (7), damages are assessed for Seto’s failure to return the security deposit in the amount of $6,450.00, less the $150.00 deposit for the garage door mechanism/electric eye unit which was returned to the Carters. The total damages award is $6,350.00. This case is returned to the trial court for an assessment of reasonable attorney’s fees, the addition of costs and interest, and the entry of judgment.
So ordered.

 The Carters’ five-count complaint charged Seto with Count I - demanding and collecting a security deposit in excess of one month’s rent; Count II - failure to account properly for the security deposit at the end of the tenancy; Count III - failure to tender or credit yearly interest on the security deposit; Count IV - unlawfully charging for a maintenance contract on the heating system; and Count V - unfair and deceptive practices in violation of G.L.c. 93A.

 Seto moved to dismiss the appeal in the trial court on the ground that the Carters failed to identify the issues presented for review. The motion was properly denied by the trial court, and Seto did not appeal that ruling. While any review of the ruling is deemed waived, we note that the issue obviously presented for review by the Carters’ appeal was the correctness of the dispositive ruling made by the trial court; namely the allowance of Seto’s summary judgment motion.

 In response to the Carters’ G.L.c. 93A demand letter, which addressed Seto’s receipt of a $150.00 deposit for a garage door mechanism and electric eye unit that the Carters claimed was an unlawful security deposit, Seto stated that the garage was “not included in the rentable premises.” Seto did not submit a Rule 56 affidavit to that effect, and the clear terms of the parties’ lease contradict her assertion.

 Seto’s demand letter response falsely asserted that bills and invoices substantiating her itemization of damages had been included in her original September 16,2002 security deposit accounting.

 The Carters have presented no argument in their brief as to the propriety of the court’s summary judgment for Seto on their complaint Count IV which dealt with the costs of the maintenance contract. Thus the issue is deemed waived. Dist./Mun. Cts. R. A. D. A., Rule 16(a)(4). See Ward v. James, 1999 Mass. App. Div. 208, 209.

 Despite an initial “findings of fact” caption, the first section of the motion judge’s memorandum amounted to his summary of the “relevant facts.” The section did not set forth Mass. R. Civ. R, Rule 52(c), findings of fact made upon conflicting evidence after a hearing or trial, which would be subject to the “clearly erroneous” standard of review on this appeal. See Makrigiannis v. Nintendo of America, Inc., 442 Mass. 675, 677-678 (2004); Maroon v. City of Pittsfield, 56 Mass. App. Ct. 124, 139 (2002). Such findings have no place in summary judgment pro ceedings. Stated alternatively, where findings of fact are necessary, summary judgment is inappropriate.

 Section 3.17(4) of 940 CMR, which pertains to security deposits, states that it is “an unfair and deceptive practice for an owner to: (a) require a tenant or prospective tenant, at or prior to the commencement of any tenancy, to pay any amount in excess of the following:... 3. a security deposit equal to the first month’s rent.”

 The regulation makes it an unfair or deceptive practice for a landlord to “fail to pay interest at the end of each year of the tenancy, on any security deposit held for a period of one year or longer from the commencement of the term of the tenancy, as required by M.G.L.c. 186, §15B....” 940 CMR 3.17(4) (c).

 Section 3.17 (4) (k) of 940 CMR makes it an unfair or deceptive practice for a landlord to “otherwise fail to comply with the provision of M.G.L.c. 185, §15B.”

 There is no similar provision in §15B for tire other violations found.