Gardner, J.
Defendant Frank R. Saia (“Saia”) has appealed the trial court’s entry of summary judgment in favor of plaintiff Hatch Mott MacDonald, Inc. (“HMM”) on its breach of contract claim.
In December, 1997, Saia contracted with Killam Associates New England (“KANE”), an environmental consulting firm, to renew construction on a partially completed housing development called City View Commons in Westfield, Massachusetts. KANE agreed to review existing plans, discuss development alternatives, and provide technical support and design plans for the project.
The contract required KANE to submit monthly invoices to Saia, listing the charges due based on an hourly rate schedule. If Saia did not dispute an invoice, payment was due within sixty days of receipt. After the sixtieth day, KANE was autho *73 rized to stop work until Saia paid the invoice in full. Saia soon fell behind on his payments. Although it would have been justified in halting its performance, KANE agreed in February, 1999, to set up a payment plan and to continue to work on the project if Saia made monthly installment payments on the outstanding invoices.
In December, 2000, KANE was purchased by the plaintiff, HMM, which continued to provide Saia with consulting services, intermittently, for the next two years. When Saia requested assistance in April, 2003, however, HMM declined. Saia had not made an installment payment since September, 2000, and HMM refused to provide additional services without payment of the outstanding balance. Despite a demand letter by HMM in August, 2003, Saia made no further payments.
In December, 2003, HMM commenced this breach of contract action against Saia to recover the balance due under the contract. The trial court granted HMM’s motion for summary judgment in February, 2006, and this Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal by Saia followed.
1. It is established that summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass. R Civ. R, Rule 56(c); Opara v. Massachusetts Mut. Life Ins. Co., 441 Mass. 539, 544 (2004). The burden is on the moving party to establish both the absence of any triable issue and his entitlement to judgment in his favor. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party satisfies his burden, the opposing parly must counter with specific facts confirming the existence of a genuine triable issue. Lee v. President & Fellows of Harvard Coll., 60 Mass. App. Ct. 836, 841 (2004). Mere assertions of the existence of disputed facts without evidentiary support are insufficient to defeat the motion. Young v. Boston Univ., 64 Mass. App. Ct. 586, 588 (2005).
2. Article 4.2 of the contract provided: “Invoices shall be submitted monthly by ENGINEER to the CLIENT and shall indicate the charges due from the Hourly Rate Schedule....” Relying on this provision, Saia’s initial contention on this appeal is that because HMM’s Rule 56 materials did not include copies of the unpaid invoices, there is a genuine dispute of material fact as to whether the invoices were delivered to him. We disagree.
In support of its summary judgment motion, HMM submitted the affidavit of its Executive Vice President, Christopher Spearing (“Spearing”), who averred:
I make this Affidavit in support of the Motion for Summary Judgment of HMM as to the facts of my own personal knowledge and with respect to matters with which I am personally familiar and in which I personally participated. Attached hereto ... is a Billing and Payment History regarding work performed by HMM for Frank Saia on the city [sic] View Commons project in Westfield, Massachusetts.
The Billing and Payment History listed the date, number, and total amount of individual invoices sent to Saia (totaling $20,003.08) as well as the date and amount of payments made on each invoice (totaling $10,701.69). The invoices spanned the period between April 24, 1998 and December 14, 2000. HMM also submitted two affidavits by its attorney, Theresa K Banash, Esq. (“Banash”), to which were attached 125 exhibits that included copies of the parties’ correspondence during the years in question. Eight of the exhibits referenced invoices or amounts owed by Saia under the contract.[1] Finally, HMM relied on Saia’s own admission in his answer that *74 he was billed by HMM for services rendered in the amount of $20,003.08.
Contrary to Saia’s claim, HMM’s supporting affidavits and attachments, coupled with Saia’s admission in his pleading, were sufficient both to indicate delivery of the invoices and to shift the burden of advancing countervailing evidence to Saia. Saia’s opposing affidavit did not even include a general denial that proper invoices were sent to him, much less any factual basis for his claim that this was a triable issue. Thus, in merely resting on “possible inferences which could be drawn in his favor,” Cruickshank v. Commerce Ins. Co., 2004 Mass. App. Div. 103, 104, citing Federal Deposit Ins. Corp. v. Csongor, 391 Mass. 737, 742-743 (1984), Saia failed to meet his Rule 56 burden.
3. Saia also argues that there is a genuine factual issue as to whether his failure to pay HMM’s invoices constituted a breach of contract given his right under Article 4.3 of the contract to dispute any invoice. The record is devoid of support for Saia’s contention.
Article 4.3 stated:
Payment shall be made by the CLIENT within sixty (60) days of its receipt of the invoice. The CLIENT shall promptly review ENGINEER’S invoices and if the CLIENT disputes any amounts invoiced the CLIENT shall give prompt written notice thereof, including the item or items disputed and the basis for the dispute. The CLIENT shall in any event pay all amounts invoiced that the CLIENT does not dispute as provided herein.
As the language of Article 4.3 is not “reasonably susceptible of more than one meaning,” the contract provision is unambiguous. Mitcheson v. Izdepski, 32 Mass. App. Ct. 903, 905 (1992). While the provision authorized Saia to dispute any amounts billed or invoiced by HMM, it required him to do so “promptly,” within sixty days of receipt of the invoice, and upon written notice to HMM. The Billing and Payment History attached to HMM’s Spearing affidavit indicates that the earliest invoice for which HMM sought payment in this action was Invoice No. 54988, dated October 28, 1998, in the amount of $3,141.52; the most recent invoice was No. 56260, dated December 14,2000, in the amount of $117.28. If Saia had actually disputed any of HMM’s invoices in accordance with contract requirements, he would have had to give written notice of such dispute no later than December 28, 1998 and February 13,2001, respectively. However, among the 125 attachments to the Banash affidavit, which comprised the record of correspondence in this case, there was no letter, facsimile transmission, or any other written notice by which Saia disputed any of the bills in question within sixty days of receipt.
Nor did Saia offer any evidence to support his assertion that there was a triable issue as to billing disputes. Saia’s counteraffidavit is devoid of even a general reference to the issue. Further, while Saia points in his appellate brief to five specific exhibits attached to the Banash affidavit, none of the documents he cites disputed any specific invoice or charge. Three of the five documents were letters sent by Saia in 2003, several years past the expiration of the sixty-day dispute period on the very last invoice issued by HMM. Although an allegation of contract breach is ordinarily a question of fact, Dowse, Inc. v. Brockunier, 1992 Mass. App. Div. 44, 47, Saia has failed to demonstrate that there was any need for a trial on the merits to resolve the issue of his breach in this case.
4. Equally lacking in any merit is Saia’s claim that summary judgment was improper because there remains an issue of fact as to whether HMM materially breached the contract by failing to design, prepare, and submit a sewerage plan connecting City View Commons to the City of Westfield’s sewerage system.
Exhibit A to the contract listed the scope of services negotiated by the parties. It required HMM to:
*75 [r]eview existing plans and reports provided by the Client, [d]iscuss possible development alternatives with the Client, [and] [p]rovide technical support and design plans as directed by the Client for future development of the property.
HMM presented abundant evidence that it satisfied these requirements. As evidenced by the attachments to the Banash affidavit, HMM rendered the following services over the life of the contract: (1) analyzed conditions at City View Commons; (2) solicited requests for proposals and retained engineers to conduct tests regarding wetland status of property; (3) drafted and submitted applications for Permit to Alter and for a Dwelling Permit; (4) prepared and filed a Request for Determination regarding the existence of wetlands at the project site and attended hearings before the Westfield Conservation Commission regarding the Request; (5) corresponded with the Massachusetts Division of Fisheries and Wildlife and the U.S. Fish and Wildlife Service regarding endangered species at project site; and (6) prepared and sent to Saia the plan to accompany Request for Determination, Request for Determination of Applicability of the Massachusetts Wetlands Protection Act, Preliminary Concepts Plan, and City View Commons Plan. The attachments further established that HMM provided Saia with status updates and received Saia’s authorization for the work performed.
By contrast, Saia’s affidavit set forth only his wholly unsubstantiated and conclusory assertions that the sewerage plan was the “gravamen of the contract,” that “[KANE] wasted $20,000.00 of billing time to do nothing whatever to advance the contract,” and that “ [t]he issue of fact is that Frank R. Saia hired [KANE] to do a Sewage Disposal Plan ... [, and] [n]o such sewerage plan has been produced.” Those contentions, standing alone, did not establish an issue for trial. See Aden v. Ludvigsen, 2003 Mass. App. Div. 180, 181.
5. Finally, Saia argues that a trial is required to adjudicate his claim that KANE materially breached the contract by assigning it to HMM without Saia’s consent. Saia’s argument is two-pronged. First, he contends that the following contract provisions create an ambiguity that only a fact finder could resolve:
Article 9. Neither the CLIENT nor ENGINEER shall assign the agreement without the written consent of the other.
Article 13. The CLIENT and ENGINEER bind themselves and their successors, executors, administrators, assigns and legal representatives to these Terms and Conditions.
There is no ambiguity. See Mitcheson, supra at 905. A fair reading of the provisions is that the first provision qualifies the second; contract duties and responsibilities are binding on only those assignees who have acquired their interest by the parties’ proper assignment. See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002).
Saia’s second contention as to an improper assignment of the contract is, quite simply, plainly wrong. HMM’s Rule 56 materials establish that no assignment occurred and that HMM is KANE’s corporate successor, not its assignee. HMM submitted an affidavit by its general counsel, Mark G. O’Connor, Esq. (“O’Connor”), who averred: “HMM purchased all of the capital stock of the Killam Group, Inc. from Thermo Electron, Inc. The business operations of Killam Associates New England, Inc. [KANE] were included in that sale.” Attached to O’Connor’s affidavit were the first page of the Stock Purchase and Sale Agreement and Section 2.5 of the Disclosure Statement to the Agreement, listing KANE and the other subsidiary corporations included in the sale. Saia failed to rebut this evidence, or to offer any proof of its conclusory allegation of an improper assignment. Once *76 again, his assertions were insufficient to identify any triable issue.
Judgment affirmed.
So ordered.

 While the affidavits or attachments may have been vulnerable to a motion to strike, Mass. R. Civ. P., Rule 56(e), Saia did not so move. The motion judge was, therefore, free to consider the Billing and Payment History and related correspondence in ruling on HMM’s summary judgment motion. See Madsen v. Erwin, 395 Mass. 715, 721 (1985); Wooster v. Abdow Corp., 46 Mass. App. Ct. 665, 666 (1999).