Barrett, J.
Plaintiff Frederick Kaplan (“Kaplan”), a licensed real estate broker, brought this action to recover half of a six (6%) percent commission from the listing broker, defendant Patriot Real Estate, Inc. (“Patriot”), for his role in the sale of land in Medway. Kaplan’s complaint asserted claims for breach of contract and violation of G.L.c. 93A, and Patriot counterclaimed for intentional interference with contractual relations, unjust enrichment, declaratory relief, and violation of c. 93A. On cross *203 motions for summary judgment, the trial court granted a partial judgment for Kaplan for breach of contract[2] This appeal by Patriot followed.
The parties’ motions for summary judgment are not included in the record on appeal. The record is composed merely of Kaplan’s (1) first amended verified complaint, with attached exhibits, (2) his second amended verified complaint, which refers to, but does not include, the exhibits attached to the first amended complaint,[3] and (3) Kaplan’s unverified answer and counterclaims, with attached exhibits. These pleadings and attachments disclose the following: On July 24, 2002, Edward and Cynthia Gleich (“Gleichs”) entered into an "Exclusive Agency Listing Agreement” with Patriot, granting it the right to sell their home in Medway for $589,900.00 from July 29, 2002 to September 29, 2002. Under the agreement, the Gleichs would pay Patriot a six (6%) percent commission if, during the listing period, the properly was sold to a buyer introduced by Patriot, or Patriot procured a ready, willing, and able buyer at the above terms. The agreement further provided that Patriot would list the property with the MLS PIN multiple listing service, and authorized it to offer compensation to other licensed brokers as “subagents of the [Gleichs], buyer’s agents or otherwise.” Paul G. Yorkis (‘Yorkis”), the president of Patriot, signed on behalf of the company.
Attached to the listing agreement was a “Listing Agreement Exclusion/NonPerformance Clause,” in which the Gleichs reserved the right to assign any acceptable offer to purchase their property to RE/MAX International Relocation Services, Inc. (“Re/Max”) ,[4] The exclusion clause provided that Re/Max would be responsible for paying the six (6%) percent commission at closing, and that the commission would be split “50% 5096.” Yorkis signed the attachment twice, as broker and as agent.
Richard and Kimberlee Drapkin (“Drapkins”) had toured the Gleichs’ home on July 21, 2002. They contacted Kaplan, a broker,[5] on July 26th for assistance in purchasing the property. Kaplan had the Drapkins sign a “Mandatory Agency *204 Disclosure” form, in which they acknowledged that he was an agent of the Gleichs, the sellers. Thereafter, on July 30th, with Kaplan’s assistance, the Drapkins submitted to Patriot an offer to purchase the Gleichs’ home for $591,000.00. The offer stated that the property had been offered to the Drapkins by both Patriot and Kaplan.
On August 5, 2002, Re/Max and Patriot executed a "One Party Listing Agreement,” in which Re/Max agreed to list the property with Patriot, from August 5, 2002 to September 30, 2002, for the purpose of selling the property to the Drapkins. Re/Max agreed to pay Patriot six (6%) percent of the purchase price on closing. It also authorized Patriot to list the property with multiple listing services and to accept the assistance and cooperation of other brokers. It added, however, that it would not be responsible for any additional commissions arising out of cobro-kerage or multiple listing agreements. Yorkis signed the agreement as the listing agent and on behalf of Patriot, the broker.
Re/Max accepted the Drapkins’ offer on August 8,2002.[6] Thereafter, in a letter to Kaplan dated August 14,2002, Yorkis rejected Kaplan’s "claim of sub agency.” Yorkis noted that Kaplan was not a member of MLS PIN, was not a Realtor®, and had never contacted Yorkis in his capacity as listing agent to ask whether he was willing to “cooperate and compensate.” Yorkis concluded, “I am putting you [Kaplan] on notice that since you are not a member of MLS PIN, and not a Realtor that I am unwilling to pay you a commission.”
Despite Patriot’s letter, Kaplan continued to communicate with the Drapkins, and assisted them with the home inspection and well-water testing.
On August 28, 2002, Re/Max and the Drapkins executed a purchase and sale agreement, in which Re/Max agreed to sell and the Drapkins agreed to buy the property for $591,000.00. Paragraph 18 of the agreement provided that “a broker’s fee for professional services of six percent (6%) of the purchase price ($35,460.00) to be split evenly is due from the SELLER [Re/Max] to Patriot Real Estate and Frederick Kaplan, the Broker (s) herein, but only if, as and when the full purchase price is paid and the deed is recorded. ...” Although Paragraph 23 stated that the “Broker (s) named herein join (s) in this agreement and become (s) a party hereto,” neither Patriot nor Kaplan signed the agreement.
Re/Max and the Drapkins closed on the property on October 15, 2002. No commission was paid to Patriot or Kaplan, however. John Roche, Re/Max’s attorney and closing agent, withheld the entire six (6%) percent commission.
On October 18,2004, Kaplan filed an amended verified complaint against Patriot, alleging breach of contract, unjust enrichment, and violation of G.L.c. 93A. On November 16,2004, Patriot filed an unverified answer, and counterclaimed for intentional interference with contractual relations, unjust enrichment, declaratory relief, and violation of c. 93A Thereafter, on April 13, 2005, the day before the summary judgment hearing, Kaplan moved to file a second amended verified complaint, dropping its claim for unjust enrichment.
On cross motions for summary judgment, the trial court granted a partial judgment for Kaplan for breach of contract. In a written decision, the court held that *205 Kaplan was an intended beneficiary of the purchase and sale agreement between Re/Max and the Drapkins, with a right to enforce paragraph 18 of the agreement. The court relied on letters submitted by Edward Gleich and the Drapkins, in which they stated that they had expected Kaplan to receive half of the commission. The court also noted that Kaplan had “acted in a manner that demonstrate^ his belief that he was an intended beneficiary of the contract,” and that as a licensed real estate agent, “[he] could reasonably [have] reified] on common practice and professional ethics among real estate brokers in his belief that he would receive his commission.”
This Dist./Mun. Cts. R. A. D. A., Rule 8A appeal by Patriot followed.
Patriot first argues that the trial court erred in relying on the letter submitted by Edward Gleich to grant summary judgment to Kaplan. In that letter, Gleich stated that it was “his desire and understanding that the 6% real estate commission would be paid out 50/50 between the listing broker and any other agent working on the deal.” Gleich further stated that it was “his expectation that you [Kaplan] (or whatever agent the Drapkin’s [sic] contacted) would receive a 50% share of the commission.” The trial court referenced Gleich’s letter in its summary judgment ruling, stating that this “affidavit’ evidenced Gleich’s “belief and reliance on the fact that the Plaintiff was an intended beneficiary.” Patriot argues that Gleich’s letter was “unsworn,” “not an affidavit,” and “nothing more than hearsay,” and that Kaplan thus failed to provide “acceptable evidence upon which to base a motion for summary judgment.”
Patriot is mistaken. “[A] judge presented -with a motion for summary judgment must consider ‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any” in determining whether summary judgment is appropriate.” Madsen v. Erwin, 395 Mass. 715, 719 (1985), quoting Mass. R. Civ. R, Rule 56(c). Here, Kaplan attached Gleich’s letter to his verified complaint, which is “treated as an affidavit for purposes of [Mass. R. Civ. R] 56(e).” Harrison v. Boston Fin. Data Servs., Inc., 37 Mass. App. Ct. 133, 136 n.9 (1994), quoting Godbout v. Cousens, 396 Mass. 254, 262 (1985). Although such an attachment may have been vulnerable to a motion to strike, Mass. R. Civ. R, Rule56(e), Patriot did not so move. The judge was, therefore, within his discretion in considering Gleich’s letter in ruling on the cross motions for summary judgment. See Madsen, supra at 721; Hatch Mott MacDonald v. Saia, 2007 Mass. App. Div. 72, 73 n.1.
Patriot next argues that trial court erred in holding that Kaplan was an intended beneficiary of the purchase and sale agreement. “Where parties have filed cross-motions for summary judgment and ‘in essence there is no real dispute as to the salient facts or if only a question of law is involved,’ summary judgment shall be granted to the party ‘entitled to judgment as a matter of law.’” Carter v. Seto, 2005 Mass. App. Div. 62, 64, quoting Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983)
Massachusetts has adopted RESTATEMENT (SECOND) OF CONTRACTS §302 (1981), which sets forth the test for determining whether a third party is an intended beneficiary of a promise:
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obliga *206 tion of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
Id. §302, at 439-440. See Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982). In this case, the trial court held that Kaplan had a right to enforce paragraph 18 of the purchase and sale agreement between Re/Max and the Gleichs, which provided:
[A] broker’s fee for professional services of six percent (6%) of the purchase price ($35,460.00) to be split evenly is due from the SELLER [Re/Max] to Patriot Real Estate and Frederick Kaplan, the Broker(s) herein, but only if, as and when the full purchase price is paid and the deed is recorded....
Re/Max is thus the promisor, and Kaplan the promisee and, because not ultimately a party to the contract, a third-party beneficiary.[7]
It is established that “[a] promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.” Quigley v. Bay State Graphics, Inc., 427 Mass. 455, 462 (1998), quoting RESTATEMENT (SECOND) OF CONTRACTS §304, at 448 (1981). See also Choate, Hall & Stewart v. SCA Servs., Inc., 378 Mass. 535, 546 (1979) (issue is whether plaintiff qualifies as beneficiary entitled to sue promisor); Vandenburg Bulb Co. v. Shinners, 1994 Mass. App. Div. 205, 206 (“ [I]t is now well established in this Commonwealth that an ‘intended’ beneficiary ... may bring suit on a contract to which he was not a party to enforce the contractual obligations of the promisor.”). Therefore, as Patriot argues in its appellate brief, even if Kaplan is an intended beneficiary of the purchase and sale agreement, such status gives him no standing to sue Patriot for breach of contract.
In addition to the purchase and sale agreement, Kaplan alleged in his complaint that Patriot had breached both the “Exclusive Agency Listing Agreement,” between the Gleichs and Patriot, and the “One Party Listing Agreement,” between Re/Max and Patriot. In the former, the Gleichs agreed to pay Patriot six (6%) percent of the purchase price, required it to list the property with MLS PIN, and authorized Patriot to offer compensation to other licensed brokers “as subagents of the [Gleichs], buyer’s agents or otherwise.” In the latter, Re/Max agreed to pay Patriot six (6%) of the purchase price on closing, and authorized Patriot to list the property with multiple listing services and to accept the assistance and cooperation of other brokers.
This Division may affirm the trial court’s grant of summary judgment, but based upon different reasoning, as long as the trial court’s result is legally correct and supported by an undisputed factual record. See GTE Prods. Corp. v. Stewart, 421 Mass. *207 22, 36 (1995). To be sure, the party moving for summary judgment has the burden to establish both the absence of any triable issue and his entitlement to judgment in his favor. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “This affirmative burden may be met by the submission of pleadings, depositions, answers to interrogatories, admissions on file, affidavits or other competent documentary evidence which satisfies the requirements of [Mass. R. Civ. R] 56(e).” Cruickshank v. Commerce Ins. Co., 2004 Mass. App. Div. 103, 104. Here, on this record, Kaplan has presented no evidence that Patriot promised to cobroker the sale or to pay Kaplan part of the commission. Both contracts provide that Patriot is merely authorized to accept the assistance of other agents in selling the property.
Lastly, Patriot argues that the trial court erred in holding that “[t]he Plaintiff as a licensed real estate broker could reasonably rely on common practice and professional ethics among real estate brokers in his belief that he would receive his commission.” Summary judgment is properly granted only if the evidence before the court indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Lexington Ins. Co. v. All Regions Chem. Labs, Inc., 419 Mass. 712, 713 (1995), citing Mass. R. Civ. P., Rule 56(c).
Because Patriot faded to include copies of the parties’ summary judgment motions, it is unclear what evidence was before the trial judge. In his brief to this Division, Kaplan writes that, in ruling in his favor, the trial judge “relied on the analysis which Plaintiff’s [sic] produced stating that ‘Selling Brokers in real estate transactions traditionally have their names placed in two agreements to protect their right to commission, ie. [sic] the offer to purchase and the purchase and sale agreement.’” This explanation comes without citation or reference to the record.
Patriot, in contrast, writes in its brief that “the Defendant presented ample evidence that the arbitration of business disputes is common practice in residential real estate when there is a dispute between brokers to a real estate commission.” Patriot thereafter cites to the “Code of Ethics and Standards of Practice of the National Association of Realtors®,” and to the “MLS Property Information Network Inc., Rules and Regulations,” both of which are attached to its amended answer. Here, again, Kaplan failed to satisfy his summary judgment burden.
Summary judgment for plaintiff Frederick Kaplan is reversed and vacated. Summary judgment is to be entered for defendant Patriot Real Estate, Inc.
So ordered.

 No motion for separate entry of judgment under Mass. R. Civ. R, Rule 54(b) was filed. Rule 54(b) provides that “any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties. ...” Here, the trial court’s notice of judgment to Patriot, dated November 14, 2005, notes that Kaplan’s G.Lc. 93A claim and Patriot’s counterclaims remain active. The docket sheet, nevertheless, indicates that the court allowed Kaplan’s motion to dismiss Patriot’s counterclaims on September 26, 2006, and dismissed Kaplan’s c. 93A claim on March 26,2007.

 The docket sheet indicates that Kaplan moved to amend his first amended verified complaint on April 13,2005, the day before the hearing on the cross motions for summary judgment. The second amended verified complaint dropped Kaplan’s claim for unjust enrichment.

 It appears that Edward Gleich was being relocated by his employer, and that Re/Max was part of his corporate relocation package.

 Kaplan alleged in his complaint that the Gleichs had recommended Kaplan, the Gleichs’ neighbor, to the Drapkins as a broker. Patriot denied that allegation for lack of knowledge.

 Although no documentation exists in the record, it appears that the Gleichs invoked the listing agreement exclusion to assign the Drapkins’ offer to Re/Max.

 The “promisee” is the person to whom “a manifestation of intention to act or refrain from acting in a specified way” is addressed. RESTATEMENT (SECOND) CONTRACTS §2, at 9 (1981). The “promisor" is “[t]he person manifesting the intention.” Id. §2, at 8.