JEFFERSON INSURANCE COMPANY OF NEW YORK *vs.*
CITY OF HOLYOKE.

Hampden. November 17, 1986. — February 6, 1987.

Present: ARMSTRONG, PERRETTA, & SMITH, JJ.

*Insurance,* Construction of policy, Liability insurance. *Contract,* Insurance.
*Public Policy. Words,* "Care, custody, or control."

Language in a policy of insurance issued to a city which insured the city's
    police department and its members against certain risks, but which
    excluded from coverage those claims arising from events during which
    the injured party was in "the care, custody or control" of the department
    or any of its members presented no ambiguity, either standing alone,
    or when read in the context of the entire insurance contract, or as applied
    to the subject matter, and consequently, the insured was not covered
    with regard to a claim arising from a person's suicide while in the
    protective custody of the city's police department. [474-476]
On appeal by a city from a judgment in favor of an insurance company
    declaring that an exclusionary clause in a policy of liability insurance
    issued to the city operated to exclude coverage of a certain claim, this
    court, assuming, but without deciding, that the "doctrine of reasonable
    expectations" is the law in Massachusetts, held that the doctrine should
    not apply where the city failed to show that the structure, content, or
    manner of printing of the insurance contract, or the insurer's methods
    of marketing the policy created reasonable expectations of wider coverage
    than was apparent from the language of the contract, and in veiw of the
    fact that the city's law department had had an opportunity to examine
    the terms of the policy before it was purchased by the city. [476-478]
There was no merit to the contention by an insured that a certain exclusionary
    clause in its policy of liability insurance should not be allowed as a
    matter of public policy. [478]

CIVIL ACTION commenced in the Superior Court Department
on January 20, 1983.

The case was heard by *Eileen P. Griffin,* J.

*Harold F. Brunault,* Assistant City Solicitor, for the defendant.
*John H. Goewey* for the plaintiff.

SMITH, J.   The city of Holyoke appeals from a judgment entered in the Superior Court in favor of Jefferson Insurance Company of New York (Jefferson).[1] The facts are not in dispute.

On or about September 20, 1979, Sandra J. Smigiel was taken into protective custody by members of the Holyoke police department. She committed suicide by hanging herself while still in protective custody. Jefferson had issued an insurance policy to Holyoke insuring the police department and its members against certain risks. The policy carried an exclusionary clause that read as follows:

> "This policy does not apply: . . . (i) To claims arising from events during which the injured party was in the care, custody or control of any Insured under this policy other than during an overt attempt to escape from care, custody or control . . . ."

The policy was in effect at the time of Smigiel's death.

As a result of Smigiel's death, Dolores Miga, the mother of the decedent and administratrix of the estate of Smigiel, brought an action against Holyoke based on negligence. She later amended her complaint to include counts against Holyoke and six police officers on a violation of civil rights theory for "fail[ing] to insure the safe custody and protection of [Smigiel] due to the lack of frequent, diligent, and adequate supervision of [her] in her cell."

After Miga brought her action but before it was tried, Jefferson filed a complaint in the Superior Court seeking declaratory relief as to Holyoke and Miga. The complaint sought a declaration that as a result of the exclusionary clause in the policy: (1) Holyoke and members of its police department were not covered in regard to the events concerning Smigiel that occurred on September 20 and 21, 1979, and (2) Jefferson was not obligated to pay any judgment awarded to Miga, in her capacity

---

[1] The judgment also ran against another defendant, Dolores Miga, administratrix of the estate of Sandra J. Smigiel, but she has not pursued her appeal. Therefore, it is not before us.

as administratrix, as a result of her action brought against Holyoke and certain members of its police department.

After the defendants had filed their answers to its complaint, Jefferson filed a motion for summary judgment. It claimed that there was no genuine issue of any material fact among the parties and that the exclusionary clause in the policy denied coverage to Holyoke and its police officers in the circumstances. A Superior Court judge denied the motion and Jefferson's subsequent motion for reconsideration. The motion judge stated in a memorandum that, in her opinion, the language in the exclusionary clause was ambiguous and that extrinsic evidence showing the circumstances of the making of the contract and the parties' intent should be permitted at the trial of Jefferson's complaint.

Miga recovered judgments against Holyoke and certain police officers after a jury trial in the Superior Court.[2] Trial was then held before a Superior Court judge, sitting without a jury,[3] on Jefferson's complaint. She found that the language in the exclusionary clause was not ambiguous and, therefore, did not need clarification by extrinsic evidence. She ruled that as a result of the exclusionary clause, the insurance policy did not provide coverage for Holyoke or its police officers for liability in regard to Smigiel's death and that Jefferson was not obligated to pay the judgments recovered by Miga in her capacity as administratrix.

1. *Ambiguity in insurance contracts*. Holyoke contends that the exclusionary clause is ambiguous, either standing alone or read in conjunction with the entire contract. It also claims that the judge should have applied the "doctrine of reasonable expectations" to resolve the dispute.

An ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning. *Ober* v. *National Cas. Co.*, 318 Mass. 27, 30 (1945).

---

[2] These judgments were affirmed in *Miga* v. *Holyoke*, 398 Mass. 343 (1986).

[3] The Superior Court judge who heard the case was not the same judge who had denied Jefferson's motion for summary judgment.

*Middlesex Ins. Co.* v. *American Employers Ins. Co.*, 9 Mass. App. Ct. 855, 856 (1980). It must be shown that reasonably intelligent persons would differ as to which one of two or more meanings is the proper one. *Ober* v. *National Cas. Co.*, 318 Mass. at 30. However, an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other's. *Southern Constr. Co.* v. *United States*, 364 F.2d 439, 453 (Ct. Cl. 1966).

The interpretation of an insurance contract is a "question of law for the trial judge, and then for the reviewing court."[4] *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). In our opinion, the words contained in the exclusionary clause, especially the phrase "care, custody or control," are clear and free from ambiguity. Therefore, we construe those words in their usual and ordinary sense. *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 605 (1978). Our inquiry does not stop there, however. Words that are clear and unambiguous, by themselves, may be ambiguous when read in the context of the entire insurance contract, or as applied to the subject matter. *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971). Reading the words of the exclusion in that context, we hold that they are not reasonably susceptible of more than one meaning.

The insurance contract provided comprehensive coverage for "all sums which the [Holyoke police department] shall become legally obligated to pay as damages because of negligent acts, errors, or omissions arising out of the performance of the . . . duties [of the Holyoke police department and its members] to provide law enforcement with respect to the following perils: Coverage A—Personal Injury; Coverage B—Bodily Injury; Coverage C—Property Damage." The exclusionary clause

---

[4] Holyoke argues that because the motion judge and the trial judge reached different conclusions as to the presence of an ambiguity, the language in the exclusionary clause must be ambiguous. That is not the rule. This court must itself determine, as matter of law, the question of ambiguity. Nor was the trial judge bound by the conclusion of the motion judge that the contract was ambiguous. See *Salter* v. *Scott*, 363 Mass. 396, 401-402 (1973); *Commonwealth* v. *Delrio*, 22 Mass. App. Ct. 712, 719 (1986).

.

clearly excludes from coverage those claims arising from events during which the injured party was in "the care, custody, or control" of the Holyoke police department or any of its members.[5] Here, there is no dispute that Smigiel was in the "care, custody or control" of the police department at the time she committed suicide. Holyoke argues, however, that the exclusion applies only to those situations where police officers use excessive force on persons who are under their "care, custody or control." We reject that argument. The language in the exclusionary clause is not reasonably susceptible of such an interpretation. If the parties had intended that the exclusionary clause should apply only to a "hands-on" situation, they could have used appropriate language. "They did not do so, and we cannot distort the plain policy language to give it that construction." *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. at 227. We conclude that there was no ambiguity in the contract and that the exclusionary clause controls the situation present in the instant case.[6]

2. *The doctrine of reasonable expectations.* The judge refused to apply the "doctrine of reasonable expectations" in this matter, and Holyoke claims error. The doctrine has been described by Professor (now Judge) Robert Keeton as follows: "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Insurance Law Rights at Variance with Policy Provisions, 83 Harv. L. Rev. 961, 967 (1970). Also see *Markline Co.* v. *Travelers*

---

[5] Our interpretation (and that of the trial judge) does not reduce the coverage to 'such a narrowly circumscribed area as to be 'unrealistically limited.' " *Middlesex Ins. Co.* v. *American Employers Ins. Co.*, 9 Mass. App. Ct. 855 (1980), quoting from *Bulyga* v. *Underwriters at Lloyd's*, 1 Mass. App. Ct. 359, 363 (1973). A reading of the contract demonstrates that it provides protection to the police department and its members in several areas of potential liability.

[6] Because the language of the contract is clear and unambiguous, the judge was correct in not resorting to extrinsic evidence to interpret it. *Newell-Blais Post #443, Veterans of Foreign Wars of the United States, Inc.* v. *Shelby Mut. Ins. Co.*, 396 Mass. 633, 638 (1986).

*Ins. Co.*, 384 Mass. 139, 146 (1981) (Liacos, J., dissenting). The basis for the doctrine is that "insurers ought not to be allowed to use qualifications and exceptions from coverage that are inconsistent with the reasonable expectations of a policyholder having an ordinary degree of familiarity with the type of coverage involved. This ought not to be allowed even though the insurer's form is very explicit and unambiguous, because insurers know that ordinarily policyholders will not in fact read their policies. Policy forms are long and complicated and cannot be fully understood without detailed study; few policyholders ever read their policies as carefully as would be required for moderately detailed understanding." R. Keeton, Insurance Law 351-352 (1971).

The doctrine does not appear to have been explicitly adopted in Massachusetts. *Bond Bros.* v. *Robinson*, 393 Mass. 546, 551 (1984). The trial judge, however, did not reject the doctrine on that ground. She stated that the doctrine might apply if there were an ambiguity, but because she found that the contract was unambiguous, the doctrine had no bearing on the outcome of the matter. Assuming without deciding that the doctrine of reasonable expectations is the law in Massachusetts, we hold that it should not be applied in this case, but for reasons other than those given by the trial judge.

The courts that have adopted the doctrine are split as to whether it should be applied in the absence of an ambiguity. See Goodhue, The Doctrine of Reasonable Expectations in Massachusetts and New Hampshire: A Comparative Analysis, 17 New Eng. L. Rev. 891, 900 (1981-1982). However, even if the doctrine were applicable where there is no ambiguity in the insurance contract, its application in this case is inappropriate. Holyoke has not shown that the "structure, content, manner of printing of the [insurance contract], or the methods and practices of marketing . . . creat[ed] reasonable expectations of a [greater area] of coverage . . . ." *Davenport Peters Co.* v. *Royal Globe Ins. Co.*, 490 F. Supp. 286, 291-292 (D. Mass. 1980). In addition, the language of the insurance contract was reviewed by the Holyoke "law department" before it was purchased by the city. It may be inferred that the attorneys for the

city, at the time of their review, were well aware of the precise areas of coverage that Holyoke desired to have placed in the insurance contract. Thus, Holyoke was in a better position than the ordinary, intelligent person who purchases an insurance policy *without advice of counsel or an independent insurance broker.* In these circumstances, we hold that the doctrine should not apply.

3. *Public policy.* Finally, Holyoke contends that the exclusionary clause should not be allowed as a matter of "public policy." It offers no Massachusetts statutory or case law in support of its argument. We have examined the contention and find it to be without merit.

*Judgment affirmed.*