USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1520

 ALISON H., p/p/a DONALD H.,

 Plaintiffs, Appellees,

 v.

 ROBERT B. BYARD, in his capacity
 as Superintendent of Schools,
 and the BELCHERTOWN PUBLIC SCHOOL SYSTEM,

 Defendants, Appellants.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Michael A. Ponsor, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Coffin and Bownes, Senior Circuit Judges.
 
 

 Regina Williams Tate, with whom Mary L. Gallant, and Murphy,
Hesse, Toomey & Lehane, were on brief for appellants.
 Claire L. Thompson, with whom Doherty, Wallace, Pillsbury and
Murphy P.C. were on brief for appellees.

November 25, 1998

 
 

 BOWNES, Senior Circuit Judge. This is an appeal by
defendants-appellants, the Belchertown Public School System and
Robert B. Byard, Superintendent of Schools, from a summary judgment
of the district court awarding attorney's fees and costs to
plaintiffs-appellees, Alison H., p/p/a Donald H.
 The attorney's fees award was the aftermath of a dispute
between plaintiffs and defendants over the special education
services to be provided Alison H. by defendants. The settlement,
which is not attacked by plaintiffs, was entered into prior to a
hearing before the Massachusetts Bureau of Special Education
Appeals. After settlement, plaintiffs demanded attorney's fees
from defendants on the basis that they were the prevailing parties
and were therefore entitled to attorney's fees pursuant to 20
U.S.C. 1415(i)(3)(B). After defendants rejected the demand for
attorney's fees, suit was brought seeking an order awarding
plaintiffs attorney's fees.
 I.
 Defendants raise five issues on appeal. The only one we
discuss is dispositive of the appeal so we do not consider the
others, interesting and intriguing as they may be. We find and
rule that plaintiffs waived the claim to attorney's fees under the
terms of the settlement agreement. Because this is an appeal from
a grant of summary judgment our standard of review is de novo. 
DeNovellis v. Shalala, 124 F.3d 298, 305 (1st Cir. 1997); Dubois v.
United States Dep't of Agric., 102 F.3d 1273, 1283 (1st Cir. 1996),
cert. denied,__ U.S. __, 117 S. Ct. 2510 (1997); Coyne v. Taber
Partners I, 53 F.3d 454, 457 (1st Cir. 1995).
 Plaintiffs cite a host of Massachusetts cases to the
effect that "abuse of discretion" is the standard of review in
Massachusetts. Because the standard of review is a procedural
matter, not a substantive one, we are bound by federal law. It
makes no difference, however, in this case because we rule that the
district made an error of law on the issue before us. This
constitutes an abuse of discretion. In Klonoski v. Mahlab, 156
F.3d 255, 276 (1st Cir. 1998), in which we said:
 As the Supreme Court has stated, '[a] district
 court by definition abuses its discretion when
 it makes an error of law.' Koon v. UnitedStates, 518 U.S. 81, 94-102, 116 S. Ct. 2035,
 135 L. Ed. 2d 392 (1996); see United States v.
 Marroquin, 136 F.3d 220, 223 (1st Cir. 1998);
 Golas v. Home View, Inc., 106 F.3d 1, 3 (1st
 Cir. 1997).

 The Facts
 Alison H. is a minor female who resides with her parents
in Belchertown, Massachusetts. The Belchertown Public School
System is responsible for providing special education to students
with learning disabilities. It began providing special education
services to Alison at the beginning of the fifth grade; they were
discontinued halfway through grade five. From then on, Alison's
parents had a running dispute with the school as to the special
education services Alison should receive and where they would be
given. No agreement could be reached on an appropriate
individualized educational plan (IEP) for Alison.
 On January 30, 1996, plaintiffs retained Attorney Claire
Thompson to represent them in the dispute with the school. She
filed a request for a hearing with the Bureau of Education Appeals. 
Thereafter Attorney Thompson negotiated for the parents on the
question of an appropriate IEP for Alison. During the
negotiations, the plaintiffs made clear that they thought that
White Oak School was the most appropriate placement for Alison and
would meet their IEP demands. White Oak School is a private
institution specializing in special education for children with
learning disabilities.
 Defendants sent a proposed new IEP for Alison on June 28,
1996 to Attorney Thompson. She replied on July 31, 1996, making
additional demands and proposing further conditions. On August 21,
1996, the attorney for the school faxed the following letter to
Attorney Thompson:
 Rick McInerney received a copy of your
 letter in which you requested additional
 changes in the IEP for Allison. After Mr.
 McInerney's review of your letter and
 requested changes, he came to the conclusion
 that it was unlikely that you or your clients
 would ever be satisfied with the IEP developed
 by Belchertown or the educational program
 provided by Belchertown. Therefore, he
 contacted White Oak School in order to
 ascertain if it had an available place for
 Allison to attend school starting in September
 1996. He has confirmed that White Oak does
 have a space available for Allison and
 therefore, would offer to Mr. and Mrs. H. the
 opportunity for Allison to attend White Oak
 for the 1996-1997 school year. As a condition
 of finalizing this agreement, Belchertown
 would be looking for the withdrawal of the
 request for hearing, which hearing is
 scheduled for September 11, 1996, as well as a
 release of any and all claims arising prior to
 the execution of the agreement. If your
 clients are interested in this offer, please
 contact me by Friday, August 23, 1996, since
 White Oak is requiring an answer by that date
 in order to continue to hold a place for
 Allison for the 1996-1997 school year.

 Should you have any further questions,
 please feel free to contact me. 

(Emphasis added.)

 Within a matter of hours Attorney Thompson replied by
fax:
 On behalf of Don and Judy H., I hereby accept
 Belchertown's offer to place Alison at White
 Oak School for the 1996-1997 school year. 
 Please forward a new I.E.P. for the H's
 signature.

 The school prepared a new IEP for Alison's attendance at
White Oak School. It was accepted by the parents on September 3,
1996. The scheduled hearing before the Bureau of Special Education
Appeals was canceled. Alison attended White Oak School for the
1996-97 school year. Belchertown School paid a total of $22,295.20
for Alison's tuition and transportation.
 By letter dated November 6, 1996 Attorney Thompson asked
that Belchertown School pay her attorney's fees "totaling $6,112.40
through August 26, 1996." The letter also stated:
 Unless the parties are able to negotiate
 settlement by November 30, 1996, I will be
 compelled to file a Complaint for attorney's
 fees in U.S. District Court. (Emphasis in
 original.)

Belchertown rejected the demand for attorney's fees. Defendants
took the position that plaintiffs had waived any claim for
attorney's fees by accepting Belchertown's offer to place Alison in
White Oak School. Plaintiff's complaint asserting their right to
attorney's fees was filed on December 6, 1996.
 II.
 The issue is a classic one of contract construction: did
plaintiffs' acceptance of Belchertown's offer to place Alison in
White Oak School subject to the condition that there be "a release
of any and all claims arising prior to the execution of the
agreement" constitute a waiver of plaintiffs' claim for attorney's
fees. The district court ruled that there was no waiver. After
finding that the plaintiffs were the prevailing parties, it stated:
 Second, I do not believe that there was any
 waiver here. There was never a release sent
 by the defendants to the plaintiffs. The
 language refers to things occurring prior to
 this agreement while the entitlement to
 attorney's fees did not really arise until
 after the agreement was executed. The
 drafting was ambiguous and my normal tenets of
 construction is that these ambiguities should
 be construed in the plaintiffs' favor and
 against the drafter.

 In addition, the plaintiffs' response to
 the offer, it seems to me, clearly only
 accepted the offer to place Alison at White
 Oak School and did not even purport to give up
 anything else, so there was no waiver.

 With respect, we disagree. We analyze the ruling
sentence by sentence. It is true that a release was never sent by
defendants to plaintiffs for execution. It would have been better
if this had been done. But the offer letter neither states nor
suggests that a release would be sent. We think, moreover, that
the plain and unambiguous language of the offer meant that
acceptance by the plaintiffs meant they had released the defendants
from "any and all claims arising prior to the execution of the
agreement." Surely the phrase "any and all claims" encompasses
attorney's fees which are a major factor and bone of contention in
this type of litigation. See e.g., Kathleen H. v. Massachusetts
Dep't of Educ., 154 F.3d 8, 14 (1st Cir. 1998); Fowler v. Unified
Sch. Dist. No. 259, 128 F.3d 1431, 1439 (10th Cir. 1997); County of
San Diego v. California Special Educ. Hearing Office, 93 F.3d 1458,
1468 (9th Cir. 1996). 
 The next sentence is puzzling. The court, after noting
that "[t]he language refers to things occurring prior to this
agreement," states that the "entitlement to attorney's fees did not
really arise until after the agreement was executed." It is true
that a claimant cannot collect attorney's fees in such a case until
it prevails, but the amount of the entitlement was based on
services rendered prior to execution of the settlement. It is what
was asked for in the First Amended Complaint. Paragraph A asks
that the court:
 A. Award the plaintiffs their reasonable
 attorney's fees and costs in the sum of
 $6,112.40 through August 26, 1996; 

(Emphasis ours.)

State of New Hampshire v. Adams, No. 98-1244, slip op. at 6-7 (1st
Cir. Nov. 12, 1998).
 The court then found the contract ambiguous and construed
it in favor of the plaintiffs and against the defendants. We rule
to the contrary.
 We realize that the question of ambiguity is a judgment
call, but there are established guidelines that lead to a well
trodden path. A contract is formed upon acceptance of an offer. 
Ismert and Assocs., Inc. v. New England Mut. Life Ins. Co., 801
F.2d 536, 541 (1st Cir. 1986).
 "The question of whether a contract term is
 ambiguous is one of law for the judge." Allen,
 967 F.2d at 698; accord Boston Five Cents Sav.
 Bank, 768 F.2d at 8; Jefferson Ins. Co. v.
 Holyoke, 23 Mass. App. Ct. 472, 503 N.E.2d
 474, 476 n.4, rev. denied, 399 Mass. 1104, 506
 N.E.2d 146 (1987). A contract is not
 ambiguous simply because litigants disagree
 about its proper interpretation. See Papago
 Tribal Util. Auth. v. FERC, 723 F.2d 950, 955
 (D.C. Cir. 1983), cert. denied, 467 U.S. 1241,
 104 S. Ct. 3511, 82 L. Ed. 2d 820 (1984). 
 Rather, a contract, or a set of documents
 which in the ensemble comprise a contract, is
 considered ambiguous only when the language "is
 reasonably prone to different interpretations." 
 Fowler v. Boise Cascade Corp., 948 F.2d 49, 54
 (1st Cir. 1991). Stated another way, contract
 language which "is susceptible to differing,
 but nonetheless plausible, constructions . . .
 is ambiguous." Allen, 967 F.2d at 700; see
 also Fashion House, Inc. v. K Mart Corp., 892
 F.2d 1076, 1083 (1st Cir. 1989).

FDIC v. Singh, 977 F.2d 18, 22 (1st Cir. 1992).
 Under Massachusetts law, "[w]here the wording
 of the contract is unambiguous, the contract
 must be enforced according to its terms." 
 Edmonds v. United States, 642 F.2d 877, 881
 (1st Cir. 1981). We see no basis for
 rewriting the contract whether or not, as an
 original proposition, it could have been
 better written as [Liberty] now proposes.

Liberty Mut. Ins. Co. v. Gibbs, 773 F.2d 15, 17 (1st Cir. 1985).
 In the final sentence of this ruling, the court held that
"the plaintiff's response to the offer . . . clearly only accepted
the offer to place Alison at White Oak School and did not even
purport to give up anything else, so there was no waiver." This
reads out of the offer letter the phrase, "as a condition of
finalizing this agreement . . . ." One of the conditions was "a
release of any and all claims arising prior to the execution of
this agreement." It was the plaintiffs who had a duty to object or
at least raise a question about the conditions imposed upon them by
the offer. Indeed, the last sentence of the offer letter states
clearly: "Should you have any further questions, please feel free
to contact me."
 It was not until long after the new IEP had been accepted
(Sept. 3, 1996) and Alison had been placed in White Oak School and
the hearing before the Bureau of Special Education Appeals had been
dismissed (Sept. 23, 1996) that Attorney Thompson made a demand for
attorney's fees (Nov. 6, 1996). If there was going to be a demand
for attorney's fees, it should have been made before the clear
conditional offer of defendants was accepted. We do not think that
plaintiffs should be able take advantage of defendant's clear
conditional offer and more than two months later make a demand for
attorney's fees. 
 We hold that the offer letter and its prompt acceptance
by plaintiffs constituted a contract between the parties. We rule
that the contract was unambiguous. The phrase "a release of any
and all claims arising prior to the execution of the agreement"
clearly encompasses plaintiff's attorney's fees. Plaintiffs
received the benefits of the contract. To enable them to avoid the
release obligation of the contract would be unjust and contrary to
the basic principles of contract law.
 The judgment below is reversed. Judgment shall enter for
the defendants. Costs on appeal awarded to defendants. So
ordered.