Moriarty, Cornelius J., J.
INTRODUCTION
Plaintiff, Andrea Greco, brought this action against the defendant, Harleysville Worcester Insurance Company (the “Insurer”), for breach of contract, declaratory relief, and under c. 93A. Greco alleges that the Insurer wrongfully denied her claim for coverage under an insurance policy Greco carried on her property. The Insurer asserts that the policy contains an exclusion from coverage applicable to the facts of this case and now moves for summary judgment. For the reasons discussed below, Insurer’s motion for summary judgment is ALLOWED.

BACKGROUND

Greco is the owner of a multifamily rental property, which, at all relevant times, was insured under a Deluxe Business Owners Policy issued by the Insurer. On April 2, 2005, a tenant called Greco to inform her of the oder of oil emanating from the basement. Upon her arrival at the property, Greco discovered a pool of heating oil in the basement of the house. Over the following several days, Greco took all necessary remedial steps to clean up the basement and surrounding areas and to prevent contamination of neighboring properties. Subsequent to these events, Greco filed a claim with the Insurer for the expense she incurred as a result of the oil release.
While the source of the oil could not be determined, parties speculate that an unidentified oil company mistakenly delivered heating oil to the properly and pumped the oil through an old fill port into the oil tank. The tank remained in the basement from an earlier time when the property used an oil-based heating system. Greco’s inspection of the oil tank after the incident revealed that the bottom of the tank rotted, resulting in oil escaping into the basement.
The Property Coverage section of the policy included the following relevant provisions:
Section I — Property Coverage
A. COVERAGE
*432 We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
* * * * *
3. Covered Causes of Loss
RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
a. Excluded in Section B., Exclusions; or
b. Limited in Paragraph A4., Limitations;
5. Additional Coverages
k. Pollutant Clean Up and Removal
We will pay your expenses to extract “pollutants” from land or water at the described premises if the discharge, dispersal, seepage, migration, release, or escape of the “pollutants” is caused by or results from a Covered Cause of Loss that occurs during the policy period.
*****
B. EXCLUSIONS
2. We will not pay for loss or damage caused by or resulting from the following:
4: ‡ ‡ 4s
j. Pollution: We will not pay for the loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the “specified causes of loss.” But if the loss or damage by the “specified causes of loss” results, we will pay for the resulting damage caused by the “specified causes of loss.”
* * * * *
k. Other Types of Loss:
(1) Wear and tear;
(2) Rust, corrosion, deterioration, hidden or latent defect or any quality in property that causes it to destroy itself.
* * * * *
But if loss or damage by the “specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.
* * * * *
H. PROPERTY DEFINITIONS
4s ‡ £ 4s ‡
5. “Pollutants” means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
4: 4; 4: 4c ‡
7. “Specified Causes of Loss” means the following:
Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet, water damage.
The Liability Coverage section of the policy contained the following provisions:
‡ ‡ ‡ ‡ ‡
Section II — Business Owners Liability Coverage
4e * 4¡ 4s 4s
B. EXCLUSIONS
4c 4* 4s ♦ ♦
1. Applicable to Business Liability Coverage — This insurance does not apply to:
4: 4: 4c 4e 4c
f. (1) “Bodily injury” or “property damage” arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.
4c 4c 4c 4c *
(2) Any loss, cost or expense arising out of any:
(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
(b) claim or “suit” by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
k. “Property damage” to:
(1) Property you own, rent or occupy.
Greco sought coverage under the policy to recover funds expended in connection with the remedial actions, repair, and monitoring of the conditions associated with the oil release. Relying on the pollution exclusion, the wear and tear exclusion, and rust exclusion, the Insurer denied her claim.

DISCUSSION

Summary judgment is appropriate where there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Nashua v. First State Ins. Co., 420 Mass. 196, 202 (1995); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party *433 bears the burden of demonstrating affirmatively the absence of a triable issue and entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This burden may be met by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege facts which would establish the existence of a genuine issue of material fact in order to defeat [the motion].” Pederson, 404 Mass. at 17. In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 17 (1983).
The interpretation of insurance policies is a question of law. Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982). If the terms of an exclusionary clause are unambiguous, the words of the policy are to be construed in their usual and ordinary sense. Barnstable County Mutual Fire Insurance Co. v. Lally, 374 Mass. 602, 605 (1978).
An ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning. Jefferson Insurance Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 474 (1987). A clause is ambiguous if it is shown that reasonably intelligent people would differ as to which one of two or more meanings is the proper one. Id. at 474-75.
However, an ambiguity does not exist simply because the opposing parties favor contradicting interpretations. Id. at 475. Courts should construe exclusionary provisions strictly against the insurer so as not to defeat any intended coverage. Vappi & Co., Inc. v. Aetna Casualty & Surety Co., 348 Mass. 427, 431-32 (1965). Any doubt created by the existence of an ambiguity should be resolved against the insurer. Camp Dresser & McKee, Inc. v. Home Insurance Co., 30 Mass.App.Ct. 318, 324 (1991).
Generally, “[t]he insured bears the initial burden of proving that the loss is within the description of the risks covered.” Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 230 (1997), citing Tumblin v. American Insurance Co., 344 Mass. 344, 320 (1962). When coverage is barred on the basis of an exclusion described in a separate and distinct clause of the policy, the insurer bears the burden to prove the applicability of the exclusion to the case at hand. Id. at 231, citing Murray v. Continental Insurance Co. 313 Mass. 557, 566 (1943). If the insurer demonstrates that coverage is excluded, the burden shifts back to the insured to show that an exception to the exclusion applies. Id.
Massachusetts courts have consistently held heating oil to be a “pollutant” under policy language similar to the language in this case. See Nascimento v. Preferred Mut. Ins. Co., 478 F.Sup.2d 143, 148 (D.Mass., 2007), and cases cited. Greco does not dispute that the release of heating oil into the basement of her property constituted pollution. Rather, she argues that the insurance policy is ambiguous because it includes both the “Additional Coverages” clause providing coverage for removal and clean up of pollutants and the pollution exclusion clause denying any coverage for losses caused by pollution.
If the policy were ambiguous, this Court would have to resolve such ambiguity against the Insurer and hold that the pollution exclusion does not negate the additional coverage for removal and clean up of the heating oil. For the purposes of this motion, the Court will presume, without deciding, that the policy should be so construed. Such construction, however, does not change the result.
The “Additional Coverages" clause provides that the Insurer will pay for clean up and removal of pollutants if the discharge or release resulted from a covered cause of loss. Covered causes of loss specifically exclude rust, corrosion, deterioration, and decay. In her deposition, Greco stated that the oil leaked into the basement from the oil tank because the tank rotted at the bottom. Webster New College Dictionary defines “rot” as “deterioration” or “decay.” Thus, it is undisputed in this case that the release of oil into the basement of Greco’s property was caused by the decay or deterioration of the oil tank. Therefore, the discharge of heating oil into the basement did not result from a covered cause of loss and does not fall within the “Pollutant Clean Up and Removal” clause of the policy.
Greco also argues that this incident satisfies an exception to the pollution exclusion because, she asserts, the damage to her property was caused by vandalism. In the context of insurance, “vandalism” is defined as “such wanton and malicious acts as are intended to damage or destroy the property insured.” Pintsopolous v. Home Ins. Co., 340 Mass. 734, 736 (1960). The record before this Court contains no evidence that a person or persons who delivered oil to Greco’s property intended to damage or destroy it. Thus, Greco failed to satisfy her burden to show that an exception to the pollution exclusion applies to the circumstances of this case.
Accordingly, the Insurer’s motion for summary judgment must be ALLOWED.

ORDER

For the foregoing reasons, the Insurer’s motion for summary judgment is ALLOWED.