# United States Court of Appeals
## For the First Circuit

No. 11-2251

CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S, LONDON,

Plaintiff, Appellee,

v.

PERRY STOLBERG,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Lynch, Chief Judge,
Selya and Thompson, Circuit Judges.

Ronald E. Harding, with whom Weston Patrick P.A. was on brief, for appellant.
John Egan, with whom David B. Stanhill and Rubin and Rudman LLP were on brief, for appellee.

May 16, 2012

**SELYA, Circuit Judge.** An injured party sued defendant-appellant Perry Stolberg, a developer, in a Massachusetts state court for injuries allegedly sustained in the course of construction work. The appellant tendered the defense of the suit to Certain Interested Underwriters at Lloyd's, London (Lloyd's), issuer of a commercial general liability (CGL) policy. Lloyd's provisionally accepted the defense but repaired to the federal district court in an effort to obtain a declaration that its policy did not obligate it either to defend the suit or to indemnify the insured. The district court agreed and entered summary judgment accordingly. After careful consideration, we affirm.

## I. BACKGROUND

At all times relevant hereto, the appellant owned property at 204-206 Norfolk Street in Cambridge, Massachusetts. He planned to renovate the premises for use as condominiums. Before starting the project, he purchased a CGL policy from Lloyd's. He also maintained workers' compensation coverage.

The CGL policy applies to bodily injury and property damage for which the insured (Stolberg) is found to be liable, whenever the same results from qualifying "occurrences" or accidents happening during the policy period. It states that:

> [Lloyd's] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Lloyd's] will have the right and duty to defend the insured against any "suit" seeking

those damages.  However, [Lloyd's] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The policy contains a number of exclusions from its broadly worded coverage.  Three of these exclusions have potential pertinence here.  The first — the Independent Contractors Exclusion (Contractors Exclusion) — provides:

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of operations performed for you by independent contractors or your acts or omissions in connection with your general supervision of such operations.

The second — the Independent Contractors' Employees or Leased Workers Exclusion (Employees Exclusion) — provides:

This insurance does not apply to "bodily injury" or "personal and advertising injury" to . . . [a]ny employee or leased worker of independent contractors arising out of operations performed for you by said independent contractors or your acts or omissions in connection with the general supervision of such operations if you have rejected the obligations of any workers' compensation or any similar law, or abrogated, waived or otherwise set aside common rights or defences generally accorded an employer under any workers' compensation, disability benefits or unemployment compensation law or any similar law[.]

The third — the Workers' Compensation and Similar Laws Exclusion (Workers' Compensation Exclusion) — states that the CGL policy does

-3-

not apply to any obligation arising under workers' compensation or similar laws.

The CGL policy took effect on May 20, 2005. By the fall of that year, the condominium conversion was in full swing. The appellant retained Allen Fox as the general contractor. Fox, in turn, engaged Robert Gatta, doing business as Simply the Best Construction (STBC), as a subcontractor. Jose Romero claims to have been employed by STBC as a day laborer on the job. He alleges that he sustained bodily injuries on or about October 6, when he toppled from a ladder at the site.

Romero sued the appellant for negligence and breach of duty in a Massachusetts state court. The appellant notified Lloyd's. Lloyd's provisionally agreed to furnish a defense, reserving the right to disclaim coverage and withdraw should it be determined that the policy did not apply. It then instituted this action seeking a declaration that it had no obligation to defend or indemnify the appellant in connection with Romero's claims.[1] See 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57.

At the close of discovery, Lloyd's moved for summary judgment, contending that Romero's claims fell within the Contractors Exclusion. The appellant not only opposed the motion

---

[1] Lloyd's named both the appellant and Romero as defendants. Both men actively litigated the case below, but Romero has not appealed. Accordingly, we discuss the declaratory judgment action as if the appellant were the sole defendant.

but also cross-moved for summary judgment, positing that the Employees Exclusion established coverage under the policy.

The district court referred the motions to a magistrate judge.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  The magistrate judge, in a thoughtful rescript, recommended granting the original motion and denying the cross-motion.  See Certain Interested Underwriters at Lloyd's London v. Stolberg, No. 09-cv-11279, 2011 WL 4458981 (D. Mass. Sept. 2, 2011).  On de novo review, the district court adopted this recommendation in full and entered judgment accordingly.  This timely appeal followed.

## II.  ANALYSIS

"We review orders granting or denying summary judgment de novo, considering the record and all reasonable inferences therefrom in the light most favorable to the non-moving part[y]."  Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010).  "We will affirm only if the record reveals 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

Once the moving party alleges the absence of all meaningful factual disputes, the non-moving party must show that a genuine issue of material fact exists.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  This showing "requires more than the frenzied brandishing of a cardboard sword."

-5-

Calvi v. Knox Cnty., 470 F.3d 422, 426 (1st Cir. 2006). The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

These conventions are not altered when a court is faced with cross-motions for summary judgment. Rather, the court must examine the motions independently, applying the usual summary judgment protocol to each of them. See Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996).

The case at hand was brought under the federal court's diversity jurisdiction. See 28 U.S.C. § 1332(a). Such jurisdiction inures where, as here, the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

In this instance, Massachusetts law supplies the substantive rules of decision. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). This panoply of rules includes "the rules relating to interpretation of the insurance policy." Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010).

The interpretation of an insurance policy is a matter of law. See Cody v. Conn. Gen. Life Ins. Co., 439 N.E.2d 234, 237 (Mass. 1982). Ascertaining the meaning of an insurance policy "is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary

sense." Hakim v. Mass. Insurers' Insolvency Fund, 675 N.E.2d 1161, 1164 (Mass. 1997). Ambiguities in the policy must be "interpreted against the insurer . . . and in favor of the insured." Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 425 (Mass. 2007).

Even so, ambiguity — unlike beauty — does not lie wholly in the eye of the beholder. An ambiguity must be real. A policy provision will not be deemed ambiguous simply because the parties quibble over its meaning. Jefferson Ins. Co. of N.Y. v. City of Holyoke, 503 N.E.2d 474, 476 (Mass. App. Ct. 1987). Rather, a policy provision "is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Citation Ins. Co. v. Gomez, 688 N.E.2d 951, 953 (Mass. 1998).

The parties agree that, in the absence of a relevant exclusion, the CGL policy at issue here would cover tort claims arising in consequence of Romero's on-site injuries. They disagree, however, about the meaning and effect of certain of the exclusions from coverage.

Lloyd's asserts that the Contractors Exclusion is directly on point and that its unambiguous meaning dictates that no coverage is afforded for Romero's claims. At first blush, this appears to be correct. The facts of this case fit neatly within the encincture of the Contractors Exclusion, which precludes

coverage for any injuries "arising out of operations performed for [the insured] by independent contractors." Romero's complaint alleges that he was working for STBC when he fell, that STBC was a subcontractor on the appellant's project, and that his injuries arose out of its operations.[2] On these facts, this case is a dead ringer for Monticello Insurance Co. v. Dion, 836 N.E.2d 1112 (Mass. App. Ct. 2005), in which the court interpreted an identical provision broadly to exclude coverage for injuries suffered by an independent contractor. Id. at 1114.

The appellant does not dispute the clarity of the language used in the Contractors Exclusion, but he nevertheless strives mightily to contest the force of that language. Even though the Contractors Exclusion is unambiguous in isolation, he argues that it must be read alongside other exclusions in the policy. He insists that, when this is done, an ambiguity looms: if the Contractors Exclusion is read to preclude coverage for all injuries suffered by employees of independent contractors arising out of their operations, the Employees Exclusion would serve no function. He adds that the Contractors Exclusion is a general provision covering all claims arising out of an independent

_____

[2] The record evinces some uncertainty as to whether Romero actually was employed by STBC at the time in question. Because coverage turns in the first instance on the allegations of Romero's complaint, see B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004), we assume the truth of those allegations.

-8-

contractor's operations, whereas the Employees Exclusion is a narrower provision specially tailored to claims asserted by independent contractors' employees. Against this background, he urges us to conclude that the specific provision trumps the general provision and that, therefore, the Employees Exclusion is controlling.

The appellant then engages in a leap of logic. He suggests that since the Employees Exclusion eliminates coverage for employees of independent contractors if the insured has rejected the requirements of workers' compensation or similar laws, the converse also must be true; that is, when an insured has fully complied with the requirements of the workers' compensation laws — as has the appellant — the policy must afford coverage for injuries to employees of independent contractors.

It is true, of course, that policy provisions should not be read in isolation and that the interplay between different policy provisions may shed light on their meaning. See Jefferson, 503 N.E.2d at 477 ("Words that are clear and unambiguous, by themselves, may be ambiguous when read in the context of the entire insurance contract."). It is also true that "[e]very word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 304 (Mass. 2009) (quoting Allmerica, 871 N.E.2d at 425) (internal quotation

marks omitted).  Moreover, in certain instances an inquiring court admittedly should look to a specific policy provision in preference to a more general policy provision.  See Utica Mut. Ins. Co. v. Weathermark Invs., Inc., 292 F.3d 77, 83 (1st Cir. 2002) (construing Massachusetts law).

These canons of construction, however, do not assist the appellant's cause.  In the last analysis, his interpretation of the CGL policy relies on mental gymnastics that we are not prepared to undertake.  We explain briefly.

To begin, the purpose of a policy exclusion is to narrow the scope of coverage.  See Donovan v. Commercial Union Ins. Co., 692 N.E.2d 536, 540 (Mass. App. Ct. 1998) (citing Weedo v. Stone-E-Brick, Inc., 405 A.2d 788, 795 (N.J. 1979)).  The appellant's suggestion that the Employees Exclusion should be read not to narrow coverage but to restore coverage depends on the curious notion that if the exclusion does not apply in a given situation, the policy must afford coverage for that situation.  Massachusetts case law runs to the contrary.  If one exclusion in an insurance policy leaves some hope for an exception, but that glimmer of hope is extinguished by another exclusion, there is no basis for a finding of coverage.  See Bond Bros. v. Robinson, 471 N.E.2d 1332, 1334 (Mass. 1984) ("We flatly reject the concept that, because [an exclusion] excludes certain possible coverage and then provides for an exception, that exception creates an ambiguity, or an

objectively reasonable expectation of coverage, when it is confronted with another explicit exclusion."); Donovan, 692 N.E.2d at 539-40.

So it is here.  Even if the Employees Exclusion leaves the door ajar for coverage for certain injuries so long as the insured has complied with the workers' compensation laws — a matter that is far from clear — the Contractors Exclusion nevertheless tightly shuts that door.

Here, moreover, the Contractors Exclusion neither renders the Employees Exclusion nugatory nor conflicts with it.  The two exclusions are unambiguous and can be read harmoniously.

The Contractors Exclusion broadly excludes coverage for any claims — including those brought by members of the general public — arising out of the operations of independent contractors. The Employees Exclusion addresses a variation on this theme: the possibility that an injured person actually employed by an independent contractor might allege that, in contemplation of Massachusetts law, he should be treated as an employee of the insured (here, the developer) and allowed to sue the latter for failing to provide him with a reasonably safe place to work.  See Mass. Gen. Laws ch. 152, §§ 66-67 (authorizing private action in tort against employer who has failed to maintain the required workers' compensation insurance).

-11-

This makes good sense. Massachusetts requires most employers to carry workers' compensation insurance. Id. § 25A. A related statute makes persons such as developers liable, in certain circumstances, to pay benefits to employees of independent contractors as if those employees were employees of the developer himself. Id. § 18. If the developer has failed to obtain the required workers' compensation insurance, the injured employee may try to sue at common law on that theory. See id. §§ 66-67; cf. McCracken v. Sears, Roebuck & Co., 744 N.E.2d 102, 104 (Mass. App. Ct. 2001) (discussing, in procedural history, an independent contractor's employee's claim against the general employer under this private action provision).[3]

The Employees Exclusion affords protection against this possibility. It ensures that the CGL policy will not apply to tort claims of this genre mounted by an independent contractor's employees. Read in concert with the Workers' Compensation

_____

[3] The Supreme Judicial Court of Massachusetts recently has held that an independent contractor's employee can sue the general employer as a liable third party even if the general employer has obtained the required workers' compensation insurance. See Wentworth v. Henry C. Becker Custom Bldg. Ltd., 947 N.E.2d 571, 574 (Mass. 2011); see also Mass. Gen. Laws ch. 152, § 15 (authorizing employee to sue liable third parties). This is distinguishable from the typical situation in which the employee of an insured employer relinquishes any private right of action that he might have had against the insured by accepting workers' compensation benefits. See Mass. Gen. Laws ch. 152, § 23. In all events, this holding post-dates the issuance of the CGL policy and, thus, could not have had any bearing on the reason for including the exclusion in the policy.

Exclusion and the Contractors Exclusion, the Employees Exclusion provides comprehensive security. If an independent contractor's employee files a claim for workers' compensation benefits, the Workers' Compensation Exclusion precludes coverage under the CGL policy. If that employee files a tort action premised upon the insured's failure to obtain the required workers' compensation insurance, the Employees Exclusion makes certain that the CGL policy will not be implicated. Meanwhile, the Contractors Exclusion exempts from coverage any injuries or damages arising out of an independent contractor's operations, broadly limiting the insured's liability for such occurrences. There is no other plausible reading of either this group of exclusions or the CGL policy as a whole.

To be sure, there are situations in which the three exclusions that we have discussed overlap. The appellant envisions this overlapping effect as a basis for narrowing and complicating the plain meaning of the Contractors Exclusion. But insurance policies are notorious for their simultaneous use of both belts and suspenders, and some overlap is to be expected. See 8 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 115:20 (2005) (noting that overlap between workers' compensation exclusions and employees exclusions is common in certain liability insurance policies); cf. United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108-09 (2d Cir. 1993) (holding that to follow a narrower

-13-

exclusion and disregard another applicable exclusion because of "[t]he overlap of the clauses . . . would violate the principle that meaning and effect should be given to all terms of a contract"). As long as the meaning of a particular exclusion remains clear, its language must be given effect. See Hanover Ins. Co. v. Locke, 624 N.E.2d 615, 617 (Mass. App. Ct. 1993) (declining, despite "some redundancy," to ignore clear exclusionary provision that overlapped with another provision).

The appellant protests that if we interpret the Contractors Exclusion literally, the Employees Exclusion adds nothing to the policy, thus running afoul of the hoary principle that all terms in a contract should be interpreted to have a purpose. See Allmerica, 871 N.E.2d at 425. This principle, however, is not without qualification. The case law is plain that courts should "presume[]" that contractual terms have meaning and effect "whenever practicable." Id. (quoting Jacobs v. U.S. Fid. & Guar. Co., 627 N.E.2d 463, 464 (Mass. 1994)) (internal quotation marks omitted); see King Features Syndicate, Inc. v. Cape Cod Broad. Co., 59 N.E.2d 481, 483 (Mass. 1945) ("If possible, reasonable effect must be given to all [of a contract's] provisions."). Where, as here, the effect of a narrow provision is starkly limited in light of a broader provision, this canon of construction does not require us to invent wholly separate purposes for overlapping provisions such that only one provision will govern

in each case.  Instead, Massachusetts law dictates that we follow the plain language of the policy, even though some terms may be rendered redundant or superfluous in particular instances. See Hanover, 624 N.E.2d at 617.  Although our reading may make the Employees Exclusion supererogatory when the Contractors Exclusion has already operated to eliminate certain events from coverage, this reading — which leaves all of the contractual provisions intact — is preferable to the appellant's reading, which guts the Contractors Exclusion and which, by logical extension, would also eviscerate the Workers' Compensation Exclusion.

The appellant's argument that the specific trumps the general is equally unpersuasive.  Before a court may supplant a general policy provision by recourse to a more specific one, there must be an inconsistency between the two provisions.  See Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty Trust), 968 F.2d 1332, 1357-58 (1st Cir. 1992) (applying Massachusetts law).  There is no such inconsistency here; the Contractors Exclusion and the Employees Exclusion simply do not conflict.

In a last-ditch attempt to save the day, the appellant seeks refuge in the doctrine of reasonable expectations.  Under Massachusetts law, this doctrine requires courts to consider "[t]he objectively reasonable expectations" of insureds regarding policy terms.  Jefferson, 503 N.E.2d at 477 (internal quotation marks

omitted).  The appellant says that he reasonably believed that the CGL policy would cover claims such as Romero's and that, under <u>Jefferson</u>, <u>id.</u> at 477-78, we must honor his reasonable expectations even though those expectations contradict unambiguous policy language.  The appellant's reliance on <u>Jefferson</u> is misplaced.  The <u>Jefferson</u> court did not need to decide — and did not decide — whether an insured's reasonable expectations could overcome unambiguous policy language.  Instead, the court's decision rested in relevant part on the ground that the insured's expectations were unreasonable.  <u>Id.</u> at 478.

Post-<u>Jefferson</u>, the Supreme Judicial Court of Massachusetts has made it pellucid that the reasonable expectations doctrine applies only when policy language is ambiguous, not when "the plain language of [an] exclusion unambiguously precludes coverage."  <u>Finn</u> v. <u>Nat'l Union Fire Ins. Co.</u>, 896 N.E.2d 1272, 1278-79 (Mass. 2008); <u>see</u> <u>Bos. Gas Co.</u>, 910 N.E.2d at 305; <u>A.W. Chesterton Co.</u> v. <u>Mass. Insurers Insolvency Fund</u>, 838 N.E.2d 1237, 1250 (Mass. 2005).  Because the Contractors Exclusion in the CGL policy is unambiguous, its terms cannot be defeated by the appellant's professed expectations.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we uphold the entry of summary judgment in favor of Lloyd's.

**<u>Affirmed</u>.**